# JULY TERM, 1874.

———◆———

## John L. Whipple v. George H. Parker.

*Settlement: Jumping accounts: Receipt.* A settlement between parties by "jumping accounts," and receipting accordingly, does not of itself and without evidence that such was the intent, include items for money afterwards paid by one on account of claims against them jointly, notwithstanding such claims originally accrued before the settlement.

*Statute of frauds.* Whether, under the statute of frauds, the contract required to be in writing is not to be treated as one entire contract, so that all the stipulations of both parties are required to be in writing:—*Quære?*

*Statute of frauds: Consideration: Executory promises.* Our statute (*Comp. L.*, § *4702*) dispensing with the necessity of expressing in any contract required to be in writing the consideration thereof, and permitting proof of such consideration by any other legal evidence, it seems would not apply to a case where the consideration consisted of counter promises or executory stipulations to be performed more than a year after the making of the contract.

*Statute of frauds: Consideration: Performance on one side.* The doctrine that a parol contract capable of performance on one side within the year, especially where performed on that side within the year, is not within the statute of frauds, notwithstanding the other party was not to perform within a year, is criticised.

*Statute of frauds: Contract performed on one side: Common counts.* But where the contract has been executed by one party and the other has received the consideration and its benefit, the former can maintain an action against the latter for the benefit thus conferred, and accepted and appropriated; not, however, upon the contract, but upon the appropriate common counts in assumpsit.

*Contracts: Statute of frauds: Agreement to be performed at end of three years.* A contract that, in consideration that the plaintiff would procure the defendant to be admitted as a partner in a joint venture with one-fourth interest therein, and in the business to be carried on and the profits to be made by it, the latter would, at the end of three years, pay whatever the business, as then developed, would show the said one-fourth was fairly worth when the contract was entered into, is within the statute of frauds, and no action can be maintained upon it unless made in writing.

*Statute of frauds: Evidence: Contract: Value: Consideration received.* In an action upon the common counts to recover back the value of the consideration paid and received and appropriated upon such a contract void under the statute of frauds, the contract may be referred to for the purpose of showing the equitable circumstances under which the consideration was received, to reduce the value; but it cannot be made use of by the plaintiff to aid him in recovering beyond the real value of such consideration.

*Associations: Incorporation: Evidence.* In such an action upon such a contract it would be unnecessary to show that the company engaged in such joint venture was an incorporated one; an association or company and the members thereof as such, may acquire and hold property rights without incorporation.

29 MICH.—47.

WHIPPLE *v.* PARKER.

*Associations: Articles: Incorporation: Corporations de facto: Estoppel.* Whether the filing of articles of association with the secretary of state is a necessary prerequisite to the existence of a manufacturing company under our statute; and whether the want of such filing before commencing business is not an objection which can only be raised on behalf of the state; and whether a member participating in the formation and in the business of a company which is a corporation *de facto* is not estopped from denying its incorporation:—*Quære?*

*Manufacturing companies: Incorporation: Partnership.* Persons associating themselves together under articles to purchase property and to carry on a manufacturing business, if their organization be so defective as to come short of creating a corporation within the statute, become in legal effect partners; and their rights, as members of the company, to the property acquired by the company, will be recognized and protected.

*Heard April 8.     Decided July 8.*

Error to Wayne Circuit.

*S. Larned* and *Henry M. Cheever*, for plaintiff in error.

*George H. Prentis* and *G. V. N. Lothrop*, for defendant in error.

CHRISTIANCY, J.

Before proceeding to the main questions in this case, we will dispose of the questions raised by the eleventh and twelfth assignments of error. The evidence showed a settlement between the parties, February 23, 1866, when the following receipt was given by Parker:

"DETROIT, February 23, 1866.

"This is to certify that I have this day settled with J. L. Whipple, jumped accounts to date.

"GEORGE H. PARKER."

The parties were joint owners or tenants in *common of* a tug. The defendant offered in evidence a bill of one hundred and fourteen dollars and thirty four cents, for supplies furnished the tug in 1865, to which plaintiff objected on the ground that it was cut off by the settlement and receipt of February 23, 1866. But the defendant was allowed to prove (under his notice of set-off), against plaintiff's objection, that this bill was not presented until April 2, 1866, when defendant paid it. The witness was also shown

a wood draft drawn by plaintiff on the master of the tug, November 4, 1865, for wood furnished the tug prior to that date, and was asked who paid it, to which plaintiff's counsel objected for the like reason; but defendant was allowed to show that it was not presented for payment till August 7, 1866, when he paid it.

We see no error in this ruling, for, though the receipt shows that the parties "jumped accounts," it cannot, without evidence to that effect, reasonably be supposed that the defendant intended to include or acknowledge payment for what he had not yet paid, and which at the time did not constitute an item of account against the plaintiff, but accrued afterwards; especially as it does not appear that he knew of the existence of either of these outstanding claims against him and the plaintiff at the time.

The two main questions in the case are: *First*, Whether there was competent proof that the company or association, called the Whipple Manufacturing Company, was a corporation; and, if not, a subordinate question, whether the plaintiff could recover without such proof; and, *Second*, Whether the contract proved was void under the statute of frauds; and, if so, then another subordinate question, whether the plaintiff would still be entitled to recover (under the common counts), upon a *quantum meruit*.

We shall consider first the question upon the statute of frauds, and if necessary, that suggested as subordinate to it; because, if the contract and the nature of the case upon the evidence be such, that in consequence of the statute of frauds, the plaintiff was not entitled to maintain his action at all, either directly upon the contract under the special count in the declaration, or upon the *quantum meruit*, then the first question mentioned in reference to proof of the corporation, and the secondary question connected with it, will become immaterial.

The contract, which the evidence tended to show, was substantially that, in consideration that the plaintiff would procure the defendant to be admitted as a partner in the

Whipple Manufacturing Company, and to have one-fourth interest in the same (one half the plaintiff's interest for which the plaintiff had paid), and in the business to be carried on and the profits to be made by it, without defendant being called upon for any compensation until the end of three years, he, the defendant, would, at the expiration of three years, pay whatever that interest should be worth; or rather, as I think, by reasonable construction (when considered in connection with all the circumstances), whatever the business as developed at the end of three years, should show that the said quarter interest was fairly worth at the time the contract was made, and the interest given to the defendant.    The evidence also shows that whatever the plaintiff was to do, was expected to be, and was, in fact, then presently and at once performed, by making the defendant the owner of one-fourth interest in the company, for which the plaintiff had already made arrangements to pay; and which, in the organization of the company, then presently organized, he did pay, and of which the defendant received the benefit without having paid any compensation; but for which, as stated above, he agreed to pay at the end of three years.

By our statute of frauds "every agreement, contract or promise shall be void which by its terms is not to be performed in one year from the making thereof, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized."—*Rev. Stat. of 1846, ch. 81, § 2 (Comp. L. of 1871, § 4698)*.

By the sixth section of the same chapter, "the consideration of any contract, agreement or promise required by the chapter to be in writing, need not be expressed in the written contract, agreement or promise, or any note or memorandum thereof, but may be proved by any other legal evidence."

It is manifest that this last section, in respect to the

statement and proof of the consideration, has no direct application to any case where no part of the contract on the part of either party has been put in writing, but only to cases where the contract on the part of the party "to be charged therewith" (usually, if not always, the defendant, whose portion of the contract or whose promise is put in writing and signed by him), though this section may have some effect, and throw some light upon the question here, which has been so much discussed, and which does not seem yet to be wholly settled elsewhere upon the authorities, whether under the statute of frauds the contract or agreement on the part of both parties is not to be treated as one entire contract, and therefore all the stipulations of both required to be in writing,—a question which it is unnecessary to discuss here, though it is proper to notice that this provision seems to favor the construction before and since this provision frequently adopted by the courts, that the "agreement required by the statute of frauds to be in writing was only the agreement of the party to be charged, and for the breach of some part of which the action is brought, and that an action might be sustained by the other party, though his portion of the agreement was not in writing, provided the contract on his part was to be and was fully executed and performed, either immediately or within the year.

But the consideration for the agreement, promise or stipulations of the party to be charged and which are in writing, may, and perhaps generally does, consist of counter promises or executory stipulations to be performed by the other party; and if these are not, by his portion of the contract, to be performed till after the expiration of a year, it may well be doubted whether this statute, dispensing with a written statement of the consideration, would apply to the case, and allow such a consideration to be proved by parol; and if he were sued upon his portion of the contract, he would be the party to be charged. But.

as there is no written contract, these questions do not arise here; and I shall not discuss them.

It has sometimes been said that if the unwritten contract was to be performed on one side within the year, especially if it were even in fact so performed, this takes the contract out of the statute as to both, though the other party was not to perform his part till after that period:— *Donellan v. Read, 3 Barn. & Adol, 899.;* and this has been followed by several cases, both in England and some of the United States, in which it seems to have been intimated that, if the consideration was actually paid by one party, he might maintain an action upon the verbal contract or undertaking of the other party, though that was not to be performed till after the expiration of the year. But I confess my inability to see how the fact of the consideration having been paid down, or within the year, or yet to be paid, affects at all the question whether the defendants undertaking, contract or promise sued upon, was to be performed within or after the year; or if only to be performed after the expiration of the year, how the action can be maintained against the "party charged thereby;" or, under our statute, how the contract can be valid and the defendant be "charged therewith," unless that portion of the contract, at least, upon which his obligation arises, is in writing. To hold otherwise, would, it seems to me, be a direct and palpable violation of both the letter and purpose of the statute, and a clear disregard of the considerations and policy which led to its enactment. Nor can I see what bearing the question of consideration has upon this particular point, whether the action can be maintained upon the special contract itself.

But if the contract has been executed by the other party, and he has received the consideration, and accepted its benefit, an action may be maintained against him for the benefit thus conferred, the money, property or value thus accepted and appropriated by him; not, however, upon the

contract, but upon the appropriate common counts in assumpsit, and upon the duty, promise or obligation springing from the property, money or benefit thus conferred by the plaintiff and received and appropriated by the defendant.

This whole question has been so clearly explained and illustrated by *Mr. Roberts* in his work on the *Statute of Frauds*, §§ *286 to 290*, inclusive, and especially by Chief Justice Redfield, in *Pierce v. Estate of Paine, 28 Vt., 34* (the clearest and ablest exposition of the whole subject to be found in any one decision), that it is only necessary to refer to them here. The last case, especially, so exactly expresses my own views of the entire question, that it would be mere repetition to go over the ground here.—See also *Frary v. Sterling, 99 Mass., 461,* and *Emery v. Smith, 46 N. H., 151:*

It is, I think, entirely clear, that as the contract, agreement or promise of the defendant on which he is sought to be charged, was not to be performed till the expiration of the three years, it was void by our statute of frauds, and no action can be maintained upon it.

But unless his failure to show a corporation precluded a recovery, which I shall presently consider, I can see no sound reason why the plaintiff was not entitled to recover upon the *quantum valebat,* or *quantum meruit,* the value of the consideration paid, or of the benefit conferred upon, accepted and appropriated by the defendant.—See authorities above cited, and *Scott v. Bush, 26 Mich., 418.* The evidence tended to show that what the plaintiff put into the company as capital, was agreed upon and treated by all the parties as of the value, as capital, of six thousand dollars; the benefit of one-half of which (three thousand dollars) went to, and was accepted and enjoyed by the defendant. And without reference to the evidence offered under the special count, the plaintiff also introduced, without objection, evidence tending to show that immediately after the organization the company proceeded to transact business,

and that, at the end of three years, the condition of the company or association was such that it had about thirty-three thousand dollars of stock and property. He further undertook and offered to show what the property held by the company, or the four persons (including the defendant) composing it, consisted of, which was objected to and ruled out, on the ground that the company was not shown to be a corporation, which evidence, if this objection was not well taken, would have tended to show the reasonable value or worth of the consideration given by plaintiff and received by defendant, the fair value of the one-fourth interest.

And though the agreement upon which the defendant received the consideration or benefit was void as a contract (and the defendant has so treated it, and repudiated it while he continues to enjoy the benefit), yet, as this is an equitable action, in which the plaintiff seeking equity must do equity, I think, as bearing upon the price and mode of estimating the value of the consideration, the contract may be referred to as one of the circumstances tending to show the condition or expectation upon which the defendant originally accepted that consideration, and that it was not expected or understood that it was to be at all events the amount of three thousand dollars, at which it was put in, unless the developments of the next three years should show it to be worth that sum; and that it could not therefore equitably be demanded back at that sum (if it could be demanded at any price, before the expiration of the time, upon which, as the question is not involved, I express no opinion). But while I think the agreement may be referred to for the purpose of showing the equitable circumstances, and of reducing the value of the consideration below that upon which it was put in, I can see no ground upon which the plaintiff can prove the contract for the purpose of showing that the value of the consideration was more than that at which it was estimated as capital when put in, without giving the plaintiff the benefit of the contract, *as such;* as no obligation to pay more could rest upon any

thing but the contract itself.    This would be to allow the
plaintiff to "charge" the defendant upon a contract which
is void.

Independent of the testimony offered exclusively under
the special count, there was evidence before the jury, with-
out objection, tending to show the value of the considera-
tion, and that this was at least equal to the amount at
which it had been put in as capital, and more testimony
of a like tendency was offered, which was erroneously ex-
cluded, unless the objection in reference to the proof of a
corporation was well taken.    This, with the subordinate
question suggested as connected with it, is all that remains
to be considered.

Looking at the declaration, it is difficult to see how it
became necessary for the plaintiff to prove the Whipple
manufacturing company to be a corporation, even under the
special count in the declaration, which does not describe it
as such, but as a partnership.    And under the common
counts, where the plaintiff was only required to show that
the defendant had received from him money, property or
rights, or something of some value which he had received
the benefit of and appropriated, under circumstances which
created a duty to pay, I confess my utter inability to dis-
cover how it became necessary, in order to maintain the
action, to prove the company incorporated; unless we can
determine, *a priori*, that an interest in the company could
be of no value without incorporation, and that the com-
pany, or the persons composing it, could acquire no property
or rights whatever, as such members, without having become
a corporation.    The question as presented and ruled upon
by the court, was not one of merely *comparative* value of
an interest in the company, for which purpose doubtless it
might be shown that an interest or a share in the company
would be worth more if incorporated, in reference to which
the question of incorporation might have been material.
But the objection was not made or sustained upon any
such ground, but upon a ground which went to the cause

of action, the right to recover at all without the proof of incorporation. And this ruling can only be sustained on the ground suggested, that the company, or its members as such, were incapable of acquiring or holding any property, money or valuable right or thing, without incorporation; and therefore the interest of one quarter given by the plaintiff and received by defendant could not possibly be of any value. This proposition certainly cannot be maintained. It was shown without objection that the company went immediately into business, that Trowbridge & Wilcox actually paid in six thousand dollars as capital, and the plaintiff put in his patent rights (or those and one year of his own services), which by consent of all was received as equivalent to six thousand dollars, of one half of which the defendant had the benefit; and at the end of three years the property of the company was worth thirty-three thousand dollars; and the plaintiff "offered to show that these four persons composing it purchased real estate for the purpose of carrying on their business and for the use of the association, also engines, boilers and machinery for carrying on the business; that defendant as a member of the association was owner of one undivided fourth part of all such real and personal property; that these arrangements were made within a day or two after the conversation between the plaintiff and defendant when the contract or arrangement was made between them;" that is to say, immediately after the organization of the company; " that defendant continued to hold such one fourth interest from July, 1868, when such organization took place, for more than three years, and now continues to hold the same." Plaintiff also offered to show what the property of the company consisted of, and also offered to introduce a deed of real estate purchased by the association.

All this was objected to, on the ground that there was no legal evidence of the existence of the corporation, and on this ground excluded by the court.

The only evidence offered by plaintiff, tending to show

a corporation, consisted of articles of association signed and acknowledged by the plaintiff and defendant and Wilcox and Trowbridge, dated August 12, 1868, purporting to be articles of association for the purpose of establishing a corporation by the name of the " Whipple manufacturing company," according to "an act to authorize the formation of corporations for mining, smelting or manufacturing," etc., approved February 15, 1855, and the acts supplementary thereto and amendatory thereof, and the record of said articles, as recorded in the office of the register of deeds among partnership records, which was admitted to be authentic, and also the by-laws of the association. But there was no proof of the filing of the articles with the secretary of state, as required of corporations of this kind before they are allowed to commence business.—*Comp. L. 1871,* § *2838.* And it was probably for this reason (for the record does not show the ground) that the objection was made that there was no legal evidence of incorporation. But whether this statute does not recognize the corporation as in existence before the filing of the articles; and whether the want of such filing before commencing business is not an objection which can only be made on behalf of the state, as we are inclined to think; or whether the defendant as a member, participating in the formation and in the business of this corporation *de facto,* was not estopped from denying its incorporation (*Swartwout v. R. R. Co., 24 Mich., 389*) ; and whether there was or was not legal evidence of the corporation, are questions not necessary to the decision of this case, and I do not propose to consider them.

Some of the evidence given on the part of the plaintiff, though not entirely clear as to the question of time, tends to show, and that offered to show that the company was in fact organized in July, or at least some time before the 12th of August, and had before that time purchased real and personal estate, would have strongly tended to show that the company had in fact been organized as partners (for which no articles of any kind were necessary), and

doing business as a partnership, some time prior to the execution of the articles for a corporation, which were not executed until the 12th of August. And certainly if they were already a partnership before the attempt to form a corporation, they would not, by the failure of this attempt, cease to be a partnership; but the attempt failing, the partnership continued; and, so far at least as any question in this case is involved, of the ownership of property acquired, they must still be considered as partners without the additional rights which an act of incorporation would give.

But suppose they were not a partnership, and had not acquired property or done business, until these articles were executed, if these articles failed to make them a corporation, then I am inclined to think they would, in legal effect, by thus associating themselves together in the purchase of the property for the purpose of carrying on the business, and in carrying it on, become partners in that business; and the business and the property acquired would be partnership business and partnership property, without the additional benefits and advantages which an incorporation would give. And though those stipulations of the articles which merely provided for the incorporation and the particular machinery for carrying that into effect, would become inoperative and cease to bind; yet the other stipulations contained in the articles contain all that is essential for the creation of a partnership,—a partnership, it may be, in the nature of a joint stock company, in which the stock is represented by transferable shares,—and a purchaser would, by force of stipulations in the articles, become, at least in equity, a member of the firm.—See *Parsons on Partnership, 12, 161, and 542, et seq.*

Not having complied with the act of May 18, 1846 (*Comp. L. of 1871, ch. 37*), in the number of partners, the officers by whom the business is to be managed, or the acknowledgment before the officer authorized under that act to take it, they could not enjoy the protection of the limitation of individual liability in proportion to the amount

of stock, given by that act. But I am inclined to think there is nothing in that act which can operate to prohibit the formation of a joint stock company, as a partnership, with the common-law liabilities and without the rights and privileges given by the act.

But it is not even necessary for the purposes of the case, that a partnership should exist, or that the members should at law be recognized as partners, if they were joint owners or tenants in common of the property acquired in the business, or if at law or in equity their rights as individuals or as members of the company, to the acquisition of property, would be recognized and protected, then an interest to the amount of one quarter would be of *some* value. And certainly, in a country professing to be governed by laws, and to recognize the rights of private property, it will not be pretended that, though these four persons, supposing themselves to be a corporation or carrying on business and acquiring this large amount of property in the name or designation of a corporation, are to be deprived of all right to such property and all benefit to be derived from it, simply because it turns out upon investigation, that they have not complied with all the prerequisites to constitute a corporation *de jure,* and that the property belongs to the public, or may be taken from them with impunity by any one who may choose to lay his hands upon it. Courts of equity, at least, if not also courts of law, would find no difficulty in recognizing their property rights as individuals, or in securing to them as a partnership, or as joint owners, or as individuals, in some form, the full enjoyment of their rights.

I think, therefore, the court erred in holding it necessary to prove a corporation, and in rejecting the offered evidence on this ground.

The judgment must be reversed, with costs, and a new trial awarded.

COOLEY and CAMPBELL, JJ., concurred.

GRAVES, CH. J., did not sit in this case.