## CHARLES C. CADMAN v. JOHN R. MARKLE.

*Statute of frauds—Contract—Breach—Damages.*

1. Where a contract, *void* under the statute of frauds, has been *executed* by one party, and the other has received the consideration and accepted its benefit, an action may be maintained against him for the benefit thus conferred, and the money, property, or value thus accepted and appropriated by him; not, however, upon the contract, but upon the appropriate common counts in *assumpsit*, and, upon the duty, promise, or obligation springing from the property, money, or benefit thus conferred by the plaintiff, and received and appropriated by the defendant. *Whipple v. Parker*, 29 Mich. 374.

2. A party who is prevented from performing a contract involving his personal services, by the wrongful act of the other party, can recover what his time was worth while attempting to perform it, and his reasonable expenses.

Error to Wayne. (Brevoort, J.) Argued July 9, 1889. Decided October 11, 1889.

*Assumpsit.* Defendant brings error. Affirmed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*E. W. Pendleton (F. H. Canfield,* of counsel), for appellant.

*Russel & Campbell,* for plaintiff.

LONG, J. This suit was brought to recover for services rendered by plaintiff to defendant in getting up an organization to promote the Edison system of electric lighting, etc., in Michigan.

The declaration is on the common counts in *assumpsit,* and also contains a special count as follows :

"For that, whereas, heretofore, to wit, on the first day of July, A. D. 1886, at Detroit, in said county of Wayne, the defendant was indebted to plaintiff in the sum of $5,000 for the price and value of certain shares of stock, which defendant, by express contract, promised the plaintiff to deliver and pay to the plaintiff for his certain commissions for work and labor performed by the plaintiff for the defendant in and about the organization of certain corporations, and in and about the procuring subscriptions to the capital stock of said corporations, at the request of the defendant."

On the trial in the court below, before a jury, the plaintiff had judgment for the sum of $1,000. Defendant brings error.

It appeared upon the trial of the cause that the defendant, in 1885, had a contract with the Edison Company, of New York, giving him the control of rights, under the Edison patents, for Michigan, which the defendant proposed to handle by organizing local companies at certain points in Michigan.

The plaintiff's claim is that in February, 1885, defendant came back from New York with a contract from the Edison

76 MICH.—29.

Company, and proposed getting up a syndicate for the purpose of organizing Edison stations throughout the State; that the defendant stated to him he could not carry it through, as he did not know people enough, and proposed to plaintiff if he would, either alone or with defendant, get the subscribers to this promoter syndicate, he would give him one per cent. of the capital stock of all the companies formed in the State of Michigan during the continuance with the Edison company, which was for 10 years. Plaintiff claims that he secured subscriptions to this organization, amounting to about $1,000,000.

It appears that, after these subscriptions had been procured, the subscribers, upon taking legal advice, concluded that the articles of association which had been proposed for the company, and to which they had subscribed, were unsuitable, and a committee of the subscribers devised a new plan under which a new form of company, with a reduced capital, was formed by the subscribers, and the rights under the Edison patents were conferred upon this new company, which has been used as the promoter company to others which have been organized within this State.

Plaintiff also claims that these subscriptions were entirely completed sometime in April, 1885; that in February, 1885, he also made an additional agreement with defendant by which he was also to have one per cent. of the capital stock of each company which he (plaintiff) organized, if he paid his own expenses, or three-quarters of one per cent. if the defendant paid his expenses, and that this contract was to continue during the life of the defendant's contract with the Edison company,—that is, the plaintiff claims that Markle agreed to give him one per cent. of the capital stock of all companies which he might organize in the State for a period of 10 years as compensation for his services in getting up the promoter company, and also that in case he organized any local company he should have the option of having one per cent. addi-

tional if he paid his own expenses, or three-fourths of one per cent. if Markle paid them.

On the trial Markle admitted making an agreement with the plaintiff, but claimed that plaintiff was only to have one per cent. of the capital stock of such local companies as he might organize, or three-fourths of one per cent. if he paid plaintiff's expenses, and this was to be in full for all services in getting up the parent company, as well as for getting up the local companies. Certain local companies were thereafter organized in the State, but not by plaintiff. The plaintiff claims that under this arrangement he went, at Markle's direction, to Adrian, and remained two weeks attempting to get up a company, when he received a letter from defendant directing him to go to Bay City, and organize a company there; that he had proceeded so far in Bay City as to get $22,000 subscribed, when the labor strike came on, and that defendant then wrote him to quit the work and return to Detroit, as his work was not satisfactory, after which time he did no more business for defendant.

The plaintiff also testified that the capital stock of the promoter company (the Detroit company) is $250,000, and stock worth par; that a company was organized at Jackson, capital stock, $100,000, worth par; and a company at Grand Rapids, capital stock, $200,000, stock worth par.

Plaintiff claims that he spent about four months at Bay City in the attempt to organize the company there. Defendant claimed, further, that plaintiff's services were of no value in organizing these companies, and that he did not recall plaintiff from Bay City, and wrote no such letter as plaintiff claims.

Under this issue, so made, the court below held that the agreement, if any such was made as stated by plaintiff, was void under the statute of frauds, being for a longer period than one year; and charged the jury, among other matters, that though the contract, if one existed between the parties,

was void under the statute of frauds, yet, if the plaintiff performed services for the defendant, he was entitled to receive whatever his services were reasonably worth.

Mr. Lloyd was called as a witness for the defendant, and testified that the amount subscribed to the new agreement in the promoter company was intended to be $250,000, and that the old subscriptions of $1,000,000 fell to the ground.

At the close of the testimony in the case the defendant requested the court to charge the jury, among other matters, that if the jury found that the agreement between the parties was that plaintiff was to receive for his services one per cent. of the capital stock of the Edison companies which might be formed within this State during a period of 10 years from the time the agreement was made, then this agreement would be void under the statute of frauds, and would afford no ground of action to the plaintiff. The court substantially gave this request in his charge to the jury, but directed them that, though the agreement was void under the statute of frauds, yet, if they found that plaintiff rendered services to the defendant, a recovery could be had for the amount such services were actually worth.

In this there was no error. In *Whipple v. Parker*, 29 Mich. 374, where suit was brought on a verbal contract of three years, though held void under the statute of frauds, Mr. Justice CHRISTIANCY, speaking for the Court, said:

" But if the contract has been executed by the other party, and he has received the consideration and accepted its benefit, an action may be maintained against him for the benefit thus conferred, the money, property, or value thus accepted and appropriated by him; not, however, upon the contract, but upon the appropriate common counts in *assumpsit*, and upon the duty, promise, or obligation springing from the property, money, or benefit thus conferred by the plaintiff, and received and appropriated by the defendant." See, also, *Pierce v. Estate of Paine*, 28 Vt. 34; *Emery v. Smith*, 46 N. H. 151.

The question whether any services were rendered by plaint-

iff to the defendant, and what such services were actually worth, was very fully and fairly submitted to the jury by the court. The plaintiff claims, and his testimony tended to show the fact, that everything he agreed to do had been done upon his part; that he completed the subscriptions, and enlisted the members of the parent company, and that the defendant derived all the benefits which were expected to flow from the plan of its organization; that by means of the parent company other companies had been organized, and were in successful operation, and that by reason of the services rendered by him the defendant has succeeded in his enterprise.

Under the claim of the plaintiff the court was not, therefore, in error in permitting the case to go to the jury as to the actual value of the services rendered by the plaintiff, and, under the common counts of his declaration, he would have a right to recover upon the *quantum meruit,* if the jury accepted his theory of the case.

Some contention also arises over the sixth request of defendant's counsel, which is that—

" Plaintiff cannot recover for his supposed services at Bay City unless the jury find that he was wrongfully prevented by the defendant from going on and completing the organization of the company there."

The court charged the jury:

"If you believe that Cadman went to Bay City and used his best efforts to organize a company there, and was prevented from doing so by reason of Mr. Markle calling him back, the plaintiff is entitled to recover what his time is worth while there, and reasonable expenses."

The claim made by the plaintiff is that he went to Bay City, and would have succeeded in organizing a company had the defendant not recalled him, and told him his work was not satisfactory, and discharged him from his employ.

Under these circumstances we think the question very fairly submitted.

Some contention is also had upon the question of the court permitting plaintiff to show the capital stock in the local companies organized by the assistance of the parent company. I see no error in this, upon the theory of plaintiff's claim, and the charge of the court thereon. If the plaintiff had been entitled to recover under the contract claimed by him, the testimony would have been competent as showing the measure of his recovery. The court, however, very properly held the contract void, and held that a recovery might be had upon the *quantum meruit*. It therefore became a matter of importance as to what those services were reasonably worth.

If, however, any error was apparent in this, the court, in his general charge, placed the matter before the jury in a manner which certainly relieved the defendant of any effect such testimony might have had in enhancing the plaintiff's damages. The court told the jury that the only evidence that they were at liberty to pass upon, in regard to the amount of stock, was that of Mr. Lloyd. We do not see how the defendant can be prejudiced by this testimony, under the circumstances.

We find no error in the refusal of the court to give defendant's several requests to charge. They applied largely to the questions arising under the contract, which the court held to be void under the statute of frauds.

We find no error in the record. The judgment must be affirmed, with costs.

The other Justices concurred.