HARRIETT SUTTON *v.* BENJAMIN GRAHAM.

LANDLORD AND TENANT. *Possession pending negotiations. Lease and purchase. Failure to contract. Effect as fixing rent.*

Where a party, pending negotiations looking to an entire contract with the owner for the yearly lease of lands for several years, and a subsequent purchase, enters into possession, and the negotiations failed to result in a contract, he is not liable for the rent stipulated for in the negotiations, but is liable for the reasonable rental value of the premises.

FROM the circuit court of Bolivar county.

HON. FRANK E. LARKIN, Judge.

Mrs. Sutton, appellant, was plaintiff in the court below; Graham, appellee, was defendant there. The suit was begun by Mrs. Sutton, a tenant, by the institution of a replevin for property which had been seized under an attachment for rent in favor of Graham, the landlord. The defendant, the landlord, Graham, answered the replevin by an avowry; the issue, which turned upon the amount of the rent due (a much smaller sum than that claimed by the landlord having been tendered to him by the tenant), was decided in Graham's favor in the court below, and Mr. Sutton, the tenant, appealed to the supreme court. The facts are otherwise fully stated in the opinion of the court.

*O. G. McGuire* and *Alexander & Alexander,* for appellant.

The case seems to have been adjudicated by the court below on the idea of there being an express contract. This is self-

evident, else Graham could not have won. A suit for use and occupation, or for rental, would at the most have resulted in a verdict for about $70 or $80. Harriett Sutton never signed the contract, but her acceptance, it is claimed, is supported by the testimony of Thomas, but certainly her transactions could not have been called a contract or agreement.

The rent contracts are not signed by Graham, consequently could not be binding on him; certainly then the contract could not be binding on the lessor, Sutton.

The contracts as shown in the record are the usual cast-iron, yield nothing sort used by syndicate companies. Has the court the right to rely upon them, unsigned by either lessor or lessee, and objected to by Sutton throughout, to determine that Sutton should pay $203.85, although she has already paid $100 to the defendant on the purchase price? We do not controvert the idea that the contracts could not be brought into show the original proposition made by Graham, or what the parties were considering; but there is no proof that Sutton agreed thereto, even though she occupied the premises. The evidence shows that she refused to sign the papers because they did not conform to her wishes; hence they should not have been the determining point for the court to say what should have been paid Sutton.

The court will note that Sutton does not deny that she is due something for the use of the property. She declared that she is ready to pay the same, in fact has paid the same in the sense that she has delivered to defendant more than defendant has repaid her. But even if she had paid nothing, and should be still due something to defendant for the use and occupation, certainly it would be a reasonable amount and not $203.85, an excessive amount for use such as resulted in production of only four bales of cotton.

In behalf of appellant, we call the attention of the court to 2 Taylor on Landlord and Tenant, 250, sec. 650, wherein it is set forth that where a lessee took a farm under an agreement

which he never signed, and the terms of which the lessor himself omitted to fulfil, the court held that the jury were not bound to give a verdict for the amount of rent mentioned in the agreement, and might ascertain the annual value of the premises by other evidences independent of the agreement and give a verdict accordingly.

When the agreement fixing the compensation is void, is it not evidence of value? *Whipple* v. *Parker,* 29 Mich., 369; *Ragsdale* v. *Lander,* 80 Ky., 62.

*Morre & Clark,* for appellee.

If Harriett Sutton went into possession of this property under a verbal agreement to lease the same for a number of years, and with the further understanding that the amounts so paid by her as rents should be taken by Graham as satisfaction *pro tanto* of the purchase money, then the relationship of landlord and tenant was established between them, and the contract would be binding upon her for one year, notwithstanding the fact that the agreement was not signed by her, or by either of the parties thereto.

The terms of the contract were specifically known to Mrs. Sutton, and she had a written form in her possession long before she ever took possession of the property, the evidence abundantly showing that the agreement had been submitted to her, and was retained by her for execution, subject to some exceptions to some minor points in it, all of which had been conceded by Graham. This was in January, 1900, whereas the testimony shows that Mrs. Sutton entered into possession of the property sometime in May of that year, and the evidence absolutely and unquestionably establishes the fact that she was to make the payments as rents, as shown by the notes, the full amount of which was established by that contract; and the date when these payments were to be made was also established by the same contract.

At the end of the year a writ of attachment was taken out

by Graham under the statutory process, for the recovery of the rent, which was levied upon the cotton raised upon these premises.

These facts abundantly establish, as we have hereinabove stated, the relationship of landlord and tenant between the parties, and entitle us to treat the agreement as binding for one year, notwithstanding the failure to sign the written agreement which remained in her hands. *Vick* v. *Ayres,* 56 Miss., 670; *Spears* v. *Robinson,* 71 Miss., 774.

Where one takes possession of land under a verbal contract of purchase, promising that if he fails to pay the price at the end of the year he will pay a stipulated rent, the agreement is invalid as a contract of purchase, but good as a lease for one year, and the vendor may sue out a writ of attachment for the rent without first tendering a deed. A tenant will not be permitted to enter into a parole agreement for the purchase, with the understanding that the purchase money shall be paid as rents on this way, and then to retain the property for one or more years and refuse to pay for the use and occupation of it with impunity. This would be such a fraud as could not be permitted to stand in any court, nor would the tenant be allowed, under any condition, to take such an advantage of his landlord.

TERRAL, J., delivered the opinion of the court.

Graham, being the owner of the Jarnigan place, on the Mississippi river, proposed, through the Williamson Land Investment Company of Memphis, to sell the same. The nature and general terms of the contract, denominated "Rent Contract and Option to Purchase," seem to have been commonly known in the neighborhood of the Jarnigan place, where appellant lived. In December, 1899, Harriett Sutton wrote to the Williamson Company that she wished to purchase forty or eighty acres of said Jarnigan plantation, which was quite a large one, pointing it out, in a general way, as being on the "Terrene side of the

levee," and inquired the specific terms of lease and purchase of said quantity of land, partly in wood, and partly opened for cultivation. After some ineffectual correspondence, she inquired the terms upon which she could get the S. E. ¼ of section 29, township 24, range 8 W., whose location she seemed to think might suit her. Thereupon, Williamson sent to Sutton a contract in blank for her signature for the S. E. ¼ of said section 29, which contract recited said quarter section to contain eighty acres. Sutton made some objection to signing the contract, which described the parcel of land as containing eighty acres, because she said the government survey showed it to contain but sixty-three acres. The form of contract forwarded to Sutton for her signature provided for the lease of said parcel of land, as containing eighty acres, from the 1st day of January, 1900, to the 1st day of November, 1904—a period of nearly five years—and stipulated for a rent to be paid as follows: For 1900, $100 cash, and $203.85 on the 1st of November, 1900; for the remaining four years, $203.85 each year, payable on the 1st of November thereof—to which several sums as rent was to be added each year a sum of money equal to the taxes and the premium on the insurance on the buildings to be put upon the property; and, said lease having been fully accomplished, it was in said contract further stipulated that Sutton should receive a deed of conveyance of said land in consideration of five other and further payments of like amounts as those already paid as rents, secured by a vendor's lien therefor. Early in the negotiation Harriett Sutton forwarded to Williamson $100, the cash payment of that much of the first year's rent; and some time in the month of May she entered into the possession of the open land (some ten or fifteen acres), and cultivated the same for the year 1900. The difference of view between Williamson and Sutton as to the quantity of land in the S. E. ¼ of section 29 was never adjusted; nor was the contract for the five-year lease, with option to purchase said tract of land, ever signed by Harriett Sutton

or by Williamson, or by his principal, Graham. In this condition of affairs between the parties the matter rested until October, when Graham sued out a distress warrant for $203.85, the remainder of the rent claimed for that year. The officer seized four bales of cotton of appellant, which seems to be the entire crop of the premises. She replevied the same, returnable to the circuit court of Bolivar county, where, by the direction of the court, a verdict was rendered for the defendant. From that judgment she appeals.

We think the peremptory instruction was erroneously given. Sutton wished to lease a tract of land for five years, with an option to purchase it; the whole to be one entire contract. The contract involved the expectation of both parties that the woodland should be opened up and put into cultivation, to meet these large payments as rent. There were not many acres of open land upon the tract when Sutton took possession of it, and the $303.85 rent for the first year was largely in excess of any reasonable rent for the first year, unless it was expected to equalize it by the four succeeding years of the lease, with option to purchase. The scheme to lease the tract of land (largely woodland) for five years, with an option of purchase, involved the idea of opening the woodland to cultivation and of making it capable of supporting the large rents to be paid, which themselves were based upon the stipulation of its purchase contained in the same contract. There was no renting of the place for a single year. The contract was a lease of five years, with option to purchase. The whole was a single contract. The five-year lease was a necessary part not only of the contract of lease, but of that portion of it relating to the purchase. If each year's lease had formed a severable part of the contract, the peremptory instruction would have been correct; but there is no more ground here to say that a contract for the lease of said land for 1900 was entered into than there is to say that a lease for 1901, 1902, 1903, or 1904 was entered into; for, if good for 1900, it is good for subsequent years, and vice versa; and

such `contention would be absurd. Where, as here, the agreement has fallen through, the measure of damages is the true value of the premises. Tayl., Landl.& T., sec. 650; *Tomlinson* v. *Day,* 6 E. C. L., 315; *Warner* v. *Hale,* 65 Ill., 395; *Capper* v. *Sibley,* 65 Ia., 254 (23 N. W., 153); *Whipple* v. *Parker,* 29 Mich., 369; *Ragsdale* v. *Lander,* 80 Ky., 62.

*Reversed and remanded.*