### CULLEY *v.* BADGLEY.

DIVORCE—ATTORNEY'S FEES—CONTRACTS—WAIVER—ALLOWANCE BY COURT.

> Under section 8628, 3 Comp. Laws (3 Comp. Laws 1915, § 11404), providing that in a suit for divorce the court may, in its discretion, require the husband to pay any sums necessary to enable the wife to carry on or defend the suit during its pendency and may decree costs against either party, the rights of an attorney for a wife as complainant in a divorce suit under a contract for prosecution of the case for what his services are reasonably worth, are not waived by the allowance by the court, and acceptance of, a sum less than the reasonable value of such services, where the order is on account of "attorney's fees" and not to "relieve" the wife from the cost of attorney's fees.[1]

---

[1] On liability of married woman for legal services in divorce suit, see notes in 24 L. R. A. 634; 34 L. R. A. (N. S.) 1080.

As to liability of husband on wife's contract for attorneys' fees in divorce proceedings, see notes in 24 L. R. A. 629; 13 L. R. A. (N. S.) 244.

Case-made from Jackson; Parkinson, J. Submitted April 5, 1917. (Docket No. 55.) Decided May 31, 1917.

Case by Estella Culley against Forrest C. Badgley for the conversion of certain moneys. From a judgment for plaintiff for less than the amount claimed, she appeals. Affirmed.

*Grove H. Wolcott,* for appellant.

*Forrest C. Badgley* (*Wilson & Cobb,* of counsel), *in pro. per.*

STONE, J. This action was brought to recover certain moneys in the defendant's possession alleged to belong to the plaintiff. The plea was the general issue, with notice of claim of lien for attorney's fees and tender.

The case is brought here by the plaintiff upon case-made, and from the statement of facts we glean the following:

The plaintiff, having trouble with her husband in the summer of 1911, employed the defendant, a practicing attorney, to institute proceedings against her husband to dissolve the marriage, and obtain permanent alimony. At the time of defendant's employment, according to his testimony, plaintiff asked him what he would charge her for his services. He told her that, inasmuch as the services he might be called upon to perform were a matter of great uncertainty, he could not in advance advise her as to the amount he would charge. He further stated to her that he might be able to effect a settlement with her husband; and, if so, the charge would be small. On the other hand, if litigation ensued, he could give her no assurance on the subject, beyond saying that he would expect such compensation as his services were reason-

ably worth; that, with this understanding on his part, defendant undertook to negotiate a settlement with her husband, but, this proving unavailing, in September, 1911, the defendant, acting as plaintiff's solicitor, prepared and filed a bill of complaint to dissolve the marriage relation and obtain permanent alimony.

The plaintiff made the claim in her testimony that the defendant from the outset, with reference to his employment, assured her that her husband would have to pay all of the expenses of the divorce suit, including his fees. On July 17, 1911, according to defendant's testimony, plaintiff wrote him a letter, in which she said that she was going to get another attorney, and that her attorneys would have to get their pay out of her husband, as she had no means. Defendant testified that the first time plaintiff came into his office after the letter was received he asked her what she meant by it, to which she replied:

"What I meant by that was all I had was this 40 acres of land out there, and if we get into a law suit with Mr. Culley, and if we don't win the case, I don't know how I could pay my lawyers; I wouldn't have anything to pay with."

To which defendant replied:

"Of course, if we don't win this lawsuit, my charge to you will be very reasonable and very small. If we do succeed in this case, I shall expect you to pay what the service is worth."

A hearing of the divorce case was had, which resulted in a decree in favor of the plaintiff. The trial, with the hearings later held for the purpose of determining the value of the property of the defendant in the divorce case, covered a period of 14 days. The decree in the divorce case required the defendant therein to pay the plaintiff herein $2,600 in cash, and also to convey to her 80 acres of land, or at his option pay

complainant $4,400, and also a solicitor's fee of $300 and the taxed costs.

The husband appealed to this court. The stenographer's transcript of testimony covered 1,136 pages, making a printed record of 531 pages.

After the case had been appealed to this court, the plaintiff filed her petition, in which she stated that she was informed by her solicitors that they should be paid at that time at least $750 to apply on their services already rendered, and to be rendered in the preparation of the case for hearing in this court, and the final argument thereof, and in addition thereto an allowance of $50 to cover the expenses of printing briefs. In both petitions filed in the circuit court for temporary alimony and in the petition filed in this court the plaintiff stated that the only property she had was 40 acres of land, subject to a life estate of her mother, and also subject to a lien of a mortgage upon which there was due $1,600; that she had no income, and would be unable to prosecute the case and defray the costs and expenses attending the same without assistance from the defendant therein.

Upon a hearing of the petition filed in this court an order was made requiring the said Culley to pay a solicitor's fee of $100 and $50 to cover the cost of printing briefs. This money was paid to the defendant herein, who immediately paid one-half of the solicitor's fee to Mr. Noon, an attorney who was employed by the plaintiff, after the divorce suit was pending, to assist in the litigation.

The decree of the circuit court was affirmed by this court with costs. *Culley* v. *Culley,* 189 Mich. 496 (155 N. W. 401).

After the decree of this court some controversy arose, the plaintiff herein claiming that Mr. Culley had forfeited his option to pay the sum of $4,400 in lieu

of conveying to her the land. In the meantime there had been turned over to the defendant herein $7,460, in which amount was included the attorney's fee allowed by the circuit court and this court.

Afterwards the present counsel for the plaintiff, having satisfied himself that the plaintiff was not entitled to the land in question, requested the defendant herein to turn over to him the $4,400 paid by Culley in lieu of such land, which was done, and the plaintiff thereupon conveyed the land to Culley. This suit was brought to recover the money in defendant's possession, $2,610, less $400 awarded by the courts as solicitor's fees, being $2,210.

While the controversy about the land was on the plaintiff made inquiry as to the charge which her attorneys, the defendant, and Mr. Noon, would make against her for services. She was then informed by the defendant that he had received some money for expenses, and $75 of the attorney's fee, being $25 allowed by the circuit court, and one-half of the amount allowed by the Supreme Court, and $300 allowed by the circuit court, and that his charge would be $1,000, giving her credit for $400 solicitor's fees allowed by the court. Mr. Noon informed her that his charge would be $500, less a credit of $50 which he had received from the defendant, being one-half of the solicitor's fee allowed by the Supreme Court. Upon receipt of this information plaintiff replied: "I understood you would get your pay out of Mr. Culley."

Before the date on which settlement was to be made plaintiff consulted Mr. Wolcott, her attorney in this suit, and, through him, made written demand upon defendant for the money in his possession, less $400 solicitor's fees allowed by the court, and gave notice to him that he was discharged as her attorney. A few days later defendant paid to Mr. Noon $450 from the funds in his hands, but without any authority from

the plaintiff, and deducted from the balance the amount of his charge of $1,000, less $400, and tendered to Mr. Wolcott, who was authorized to receive the money, the balance of the money in his hands, in gold, the amount of the tender being $1,610, which was refused, and suit was brought.

Upon the trial the plaintiff claimed and testified that she had a bargain with defendant which in effect was that he should represent her in said litigation, and take as payment for his services such sums as were allowed by the court for attorney's fees. The defendant denied that such agreement was ever made, and testified that an agreement was made with the plaintiff that he would charge her what his services were worth. The trial court submitted the controversy to a jury to find what the bargain was. The instructions were plain and specific that, if the bargain was as claimed by the plaintiff, the tender was not sufficient, and the plaintiff would be entitled to a verdict for $2,210; that, if the contract was as claimed by the defendant, the tender was sufficient, and the plaintiff would be entitled to a verdict for $1,610. The jury found the contract to be as claimed by the defendant, and returned a verdict for the plaintiff in the latter sum.

That defendant's charge for services was reasonable was not disputed at the trial; the plaintiff contending that, the courts having awarded certain sums of money in the way of solicitor's fees, the defendant was obliged to accept such awards in full payment and satisfaction of his services, regardless of the value of such services or any contract between the parties.

At the close of the evidence plaintiff moved for a directed verdict in favor of the plaintiff for the sum of $2,210, on the ground that, the defendant having had an allowance for solicitor's fees, conceded to be $400, out of the property of the defendant in the divorce case, and the defendant having received the

same, he could not claim anything further of the plaintiff. The court, under the statute, reserved decision thereon, and the jury rendered the verdict above stated. Plaintiff's attorney also requested the court to charge the jury that the defendant, having had solicitor's fees allowed by the court, conceded to be $400, could not claim anything further from the plaintiff. This request was refused. Later plaintiff brought up for hearing said motion for judgment thereon in favor of the plaintiff for $2,210 notwithstanding said verdict, which motion was denied, and judgment was rendered for the amount of the verdict, with costs to the defendant.

Under appropriate assignments of error counsel for appellant says:

"The sole question of law for consideration by this court, upon the agreed facts, seems to be whether or not a solicitor employed by a married woman in a divorce case, after having had an allowance for his fees made by the court out of the husband's estate, can make any further claim for compensation by the wife. The question has never been directly raised in this court before, to the knowledge of plaintiff's counsel."

Our attention is called to section 8628, 3 Comp. Laws (3 Comp. Laws 1915, § 11404), and its construction in *Wolcott* v. *Patterson*, 100 Mich. 227 (58 N. W. 1006, 24 L. R. A. 629, 43 Am. St. Rep. 456), and *Jordan* v. *Westerman*, 62 Mich. 170 (28 N. W. 826, 4 Am. St. Rep. 836). It is urged that, when an attorney receives the allowance made by the court out of the husband's estate, his entire compensation is provided for, and he has no right to insist that the wife shall turn over to him a part of her alimony to make good what he considers inadequate for his services. We understand counsel for appellant to claim that, no matter what the contract was, when the application was made to the court for this compensation, and it was allowed

and paid defendant, he thereby waived any other or further claim against the plaintiff. The facts are that the plaintiff applied to the courts for relief under the statute cited, and not the defendant. We do not think that by such application the plaintiff could be relieved of her contract with the defendant, as found by the jury. We have read the cases cited by appellant with care, and do not think that they support the position claimed. In the *Wolcott Case* this court said:

"The statute clearly indicates that such proceedings are to be maintained at the cost of the wife, unless the court shall relieve her of such cost by an order for expense money to be paid by her husband."

In this court the order was made on "account of" attorney's fees, and we do not think that this record shows that the sums ordered paid were to "relieve" her from such cost, or from her contract with defendant. In the *Wolcott Case* we also said:

"It would seem to follow logically that, having the power to bring suit, and being in such suit responsible for costs, she must be held competent to contract for the services of an attorney to represent her rights. We think the right to contract for such services is necessarily incident to and included in her right to bring suit."

We think it was the defendant's duty, in representing his client, to obtain, in the way of costs and expenses, what he in fairness could obtain at the hands of the court, to the end that his client might to that extent be relieved. Did he, by performing this duty, vitiate his contract with the plaintiff, which entitled him to a fair compensation for the services rendered? We think not. It would be unfortunate for the client if this were so; for no married woman would be able to have a contract with her counsel, and be at liberty to apply to the court for aid under the statute, without thus abrogating the contract.

In *McCurdy* v. *Dillon*, 135 Mich. 678 (98 N. W. 746), it was held that a contract between an attorney and a married woman by which the attorney should receive as compensation for his services a certain per cent. of the alimony, to be allowed in the case, is void, as contrary to public policy, following *Jordan* v. *Westerman, supra*. This holding rendered it necessary for this court to pass upon the rights of the parties, as the service had been performed. Chief Justice MOORE, speaking for the court, said:

"It is the law of this State that a married woman may make herself chargeable for the services of an attorney employed by her in a divorce suit. *Wolcott* v. *Patterson*, 100 Mich. 227 (58 N. W. 1006, 24 L. R. A. 629, 43 Am. St. Rep. 456). If a valid contract for retainer fees was in fact made, it would not be abrogated because an attempt was made to merge it in a void contract. * * * On the other hand, if no contract was made as to how Mr. McCurdy should be paid, except the void contract, then he would be entitled to recover what his services were reasonably worth. *Cadman* v. *Markle*, 76 Mich. 448 (43 N. W. 315, 5 L. R. A. 707)."

See, also, *In re De Spelder's Estate*, 181 Mich. 153-160 (148 N. W. 179).

In *State, ex rel. Arthur*, v. *Superior Court*, 107 Pac. 876 (58 Wash. 97), the supreme court of Washington considered statutes similar to ours in a divorce suit by the wife. We quote from the headnote:

"Section 988, authorizing the court in an action for divorce to make, as between the parties, such orders as it deems proper for the disposition of the property and the children of the parties, and relative to the expenses of the action, does not give the court jurisdiction to determine questions arising solely between the litigants and their counsel; but section 474, providing that the measure of compensation of attorneys shall be left to the agreement of the parties, applies to an action for divorce."

The code provisions there referred to are quite similar to our sections 8628, and 11254, 3 Comp. Laws (3 Comp. Laws 1915, §§ 11404, 12079).

We find no error in the record, and the judgment of the circuit court is affirmed.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.