## SARAH M. JORDAN v. WALTER S. WESTERMAN AND WALLACE WESTERMAN.

*Husband and wife—Contract of wife with solicitors in advance of decree for divorce and alimony—Giving share of alimony to them for their services—Is void as against public policy—Demand not necessary before bringing suit for share retained—Decree for alimony—Vests no absolute right in wife thereto—Public policy demands permanency of marriage relation—And settlement of differences between husband and wife—Contract tending to prevent, void.*

1. A contract made between a wife and her solicitors in advance of a decree for divorce and allowance of alimony, giving the solicitors one-half of such alimony, is void as against public policy.

2. Where suit is brought by the wife to recover from her solicitors the amount retained by them under such a contract, no demand is necessary before commencing such action.

3. A decree for alimony vests no absolute right thereto in the wife. *Perkins v. Perkins*, 10 Mich. 425.

4. Public policy is interested in maintaining the family relation, the interests of society requiring that such relation be not lightly severed, and that families shall not be broken up for *inadequate* causes or from *unworthy* motives; and where differences have arisen which threaten disruption, public welfare and the good of society demand a reconciliation, if practicable or possible; and for *these* reasons, a contract which tends to prevent such a reconciliation is void.

Error to Lenawee. (Howell, J.) Argued June 9, 1886. Decided July 1, 1886.

Assumpsit. Defendants bring error. Affirmed. The facts are stated in the opinion.

*Millard & Weaver* (*T. M. Cooley*, of counsel), for appellants:

How. Stat. § 9004, removes all restrictions upon the right of a party to agree with an attorney as to his compensation for services. The old rules restricting such right applied only to contracts made *after* the relation of attorney and client was formed and the attorney had entered upon the business (*Dickinson v. Bradford*, 59 Ala. 581), and not after it had terminated (Story's Eq. Juris. § 314).

*Richard A. Watts*, for plaintiff:

Defendants claimed the money in their own right, denying that they held it in trust for plaintiff, and no formal demand was necessary before bringing suit: *Tillotson v. McCrillis*, 11 Vt. 477; *Carroll v. Cone*, 40 Barb. 220; *Walradt v. Maynard*, 3 Id. 584; *Homan v. Laboo*, 1 Neb. 207; *Heimbach v. Weinberg*, 18 Mich. 48.

The contract was invalid, because Mrs. Jordan was at time of its execution a married woman: *Wilson v. Burr*, 25 Wend. 386; *Putnam v. Tennyson*, 50 Ind. 456; *Whipple v. Giles*, 55 N. H. 139.

How. Stat. § 9004, does not remove the parties authorized to contract beyond the general doctrine governing dealings between a trustee and his *cestui que trust*. In all such cases the party claiming under such a contract must show that it is fair and just to the weaker party, or it will be set aside: *Howell v. Ransom*, 11 Paige, 538; *Starr v. Vanderheyden*, 9 Johns. 253; *Ford v. Harrington*, 16 N. Y. 285; *Nesbit v. Lockman*, 34 Id. 169; *Whitehead v. Kennedy*, 69 Id. 466; *Brock v. Barnes*, 40 Barb. 521; *Freelove v. Cole*, 41 Id. 318; *Dickinson v. Bradford*, 59 Ala. 581; *Miles v. Irvin*, 16 Am. Dec. 623; *Briggs v. Withey*, 24 Mich. 143; *Witbeck v. Witbeck*, 25 Id. 442; *Wartemberg v. Spiegel*, 31 Id. 400; *Storrs v. Scougale*, 48 Id. 400; Story's Eq. Juris. §§ 234–251, 310–314.

The contract is void because champertous, the attorneys agreeing to advance the expense of carrying on the suit: *Backus v. Byron*, 4 Mich. 535; *Stearns v. Felker*, 28 Wis. 594; *Allard v. Lamirande*, 29 Id. 502; *Thompson v. Reynolds*, 73 Ill. 11.

CHAMPLIN, J.    Defendants are attorneys at law and solicitors in chancery, practicing in the city of Adrian.

In November, 1882, the plaintiff in this suit employed them to prosecute a suit for divorce in the Lenawee circuit court.    They drafted and filed the bill on November 3, 1882, and obtained a decree for divorce on December 1, 1882. There was no provision in the decree relative to alimony. Previous to the decree the defendant in the divorce suit paid to the defendants above named $4,500, in full for alimony, costs, and expenses.    It is to recover this money that this suit is brought.    The defendants claim to withhold one-half of the above amount, or $2,250, under an agreement which they claim to have made with plaintiff, and which she denies was made.

At the time the suit was instituted plaintiff lived with her husband upon a farm in the vicinity of Adrian.    He had become an habitual drunkard, and, as it was alleged in the bill, he had frequently been guilty of cruel and inhuman treatment towards her.

They had two sons.    The eldest, whose name is Martin, was then 17 ; the other, Eddie Jordan, was then 11 years of age.    She sent by Martin, requesting defendants to come to the farm, so she could engage them to bring the suit for divorce ; and accordingly, taking advantage of Mr. Jordan's presence in the city, one of the defendants went to the farm, and there saw Mrs. Jordan.    She stated her case to him, and seemed greatly agitated and frightened lest her husband should return and find the defendant there, and appears to have been in great fear of bodily injury from her husband. It was arranged that defendants should prepare a bill of complaint, and have it in readiness, and the first opportunity she found she would go to Adrian, and sign and verify it.

The parties differ in their narration of what occurred at this interview.    The defendant says he asked her about pay, and she said she had nothing, and he told her that he sometimes took such suits upon shares, and she said that would be satisfactory to her.    She says that she asked him about pay, and he replied that he would get his pay out of Jordan ;

that he would have to pay everything; and asked how much he was worth, and she told him that he was estimated to be worth $40,000.

On the evening of November 3, 1882, Mrs. Jordan, with her two children, went to defendants' office, and there signed the bill which had been prepared, and she verified it before an officer. She says that she intended to go and remain among friends in or near Grand Rapids and Manistee, and stay until the decree was obtained; and defendants say that she desired them to take the whole charge and management of her case, including alimony; and to enable them to do so, and to secure their pay, they drew up, and she executed, the paper writing of which the following is a copy, viz.:

" Know all men by these presents, that I, Sarah M. Jordan, of the county of Lenawee and State of Michigan, have made, constituted, and appointed, and by these presents do make, constitute, and appoint, Walter S. Westerman and Wallace Westerman my true and lawful attorneys for me, and in my name, place, and stead, to prosecute to completion certain divorce proceedings this day commenced by me against my husband, George W. Jordan.

"Said Westerman & Westerman are to pay all costs incident to the prosecution of said proceedings until they are terminated; said costs including the officer's fees for serving subpœna in commencing said divorce proceedings; also clerk's fees; commissioner's fees for taking complainant's proofs, and reporting the same to circuit court; also witness fees; and all other costs or charges proper to be paid in conducting said divorce proceedings to completion.

" Said Westerman & Westerman are to have, as a reasonable compensation for their services and costs aforesaid, whatever sum the said George W. Jordan can be compelled to pay by the court, or otherwise, for alimony, either temporary or permanent, as well as whatever may be allowed by the court for costs and expenses, should there be anything allowed for such purpose, unless said sums exceed three hundred dollars. In that case the said Westerman & Westerman are to have one-half of the remainder or additional sum.

" Giving and granting unto the said Westerman & Westerman, said attorneys, full power and authority to do and perform all and every act and thing whatsoever requisite and

necessary to be done in and about the premises as fully, to all intents and purposes, as I, Sarah M. Jordan, might or could do if personally present, with full power of substitution and revocation; hereby ratifying and confirming all that my said attorneys or their substitute shall lawfully do, or cause to be done, by virtue hereof.

"In witness whereof, I have hereunto set my hand and seal the third day of November, 1882.

"Sarah M. Jordan."

This paper defendants testify was partly drawn before she came, but the portion in reference to their compensation was written in after she had signed and verified the bill. The power of attorney was acknowledged before a notary public. Wallace Westerman testifies that he read it all over to her carefully before she signed it, and she said it was satisfactory to her if it was to him.

She denies explicitly that she ever made such an agreement respecting the pay for their services, and testifies that the part of the paper relating thereto bearing her signature was not read to her by the defendants.

After the suit was commenced Mr. Jordan saw the defendants with a view of effecting a settlement and reconciliation, and desired to know where Mrs. Jordan was, but they refused, in accordance with a request made by her, to disclose her whereabouts. Jordan offered them $3,000 as alimony for Mrs. Jordan, which they refused. He then offered to convey to her by deed the best 80 acres of land he had, subject to a life-interest to him, and to treat her well if she would return to her home. He employed one of the defendants to carry this proposition to Mrs. Jordan. She refused, and then he retained counsel to defend the suit.

His counsel endeavored to effect a settlement, and desired and requested defendants to tell them where Mrs. Jordan was, so they could communicate with her with a view to a reconciliation and renewal of the family relations, and made an offer of conveyance of land to her worth about $8,000 under certain conditions. Defendants refused to tell where she was, or to accept the offer, asking how they could be compensated in case of such settlement. Defendant's (Jor-

·dan's) counsel said they should have a reasonable compensation for their service, and that defendant, Jordan, should pay it. They inquired what counsel regarded a reasonable ·compensation, and were told $500. Jordan's counsel then ·offered to pay defendants for Mrs. Jordan, for alimony, ·$3,000, and $500 for their services; which offer they raised later to $3,500, and $500 for defendants' services,—all of which were declined.

They disclosed to counsel for Jordan the fact that they held an agreement by which they were to receive one-half of all money received as compensation, and they admitted it would be against their interest to have the parties settle and live together again, and that they should not make any ·effort to have the parties do so; and also that they were looking out for their own interests in getting as large a sum as possible. Finally Jordan, by his counsel, offered $4,500, and this sum they accepted, and the following agreement was entered into :

" It is hereby agreed by and between the parties hereto as follows :

" Said defendant is to pay the complainant the sum of four thousand five hundred dollars, the same being in full for costs, alimony, and expenses in the above-entitled cause; two hundred and fifty dollars to be paid down on the execution of this instrument, and the balance (forty-two hundred and fifty dollars) on the presentation of a certified copy of a decree in the above-entitled cause to the attorneys for the defendant.

"*November 20, 1882.*"

This was signed by the attorneys, and also a receipt for the $250 was signed by the defendants.

On the twenty-seventh of November a stipulation to take proofs and waiving notice was signed by the solicitors for the respective parties. The proof was taken on the 28th and 29th, and was reported to the court December 1, and a decree thereon obtained the same day dissolving the marriage, and giving to the complainant the custody of the youngest child. On the same day the balance of $4,250 was paid over to defendants.

Aside from the offer Jordan employed defendants to convey to Mrs. Jordan, none of the other offers were communicated to her. It does not appear that any application was ever made to the court for an order allowing expenses or alimony. Neither was the court made acquainted with the agreement between the solicitors of the parties dated November 20, 1882.

On December 1, 1882, defendants addressed a postal card to plaintiff's son, which reads as follows:

"*Mr. Martin Jordan*—DEAR SIR: Decree for your mother was granted to-day by our circuit court, in chancery. Alimony settled at forty-five hundred dollars. Inform us where she is, so that we can send her share, which will be twenty-two hundred and fifty dollars. We can go to Grand Rapids any day you may fix, should you think it necessary. Write as soon as you get this. In haste,
                              "WESTERMAN & WESTERMAN."

This letter reached the plaintiff, who sent a relative by the name of Aldrich to Adrian, with authority to collect the whole amount of alimony due her. On reaching Adrian he thought it expedient to take the advice of counsel, and consequently called upon a well-known and reputable firm; and, upon making known his business to a member of the firm, was told that the firm had already been consulted by the defendants, but whether they intended it as a retainer he could not say, but would step into their office and ascertain. After an absence of a few minutes he returned, and told Mr. Aldrich that the firm had been retained. Aldrich thereupon employed another attorney, and this suit was at once commenced. A short time after the suit was commenced the defendants paid over to Mrs. Jordan what they conceded to be her due, being the sum of $2,250. The balance they claim to retain as their own property under the terms of the written contract. The jury returned a verdict in favor of plaintiff for $2,121.50.

The defendants contend that the judgment entered upon this verdict is erroneous for two reasons:

1. Because demand should have been made upon them for the money before suit brought.

2. Because the contract entered into in regard to compensation, included in the power of attorney, was a legal and valid contract, and under it they were entitled to retain and keep back one-half of all the money received for alimony.

The force of the first objection depends upon the validity of the second. If defendants were right in the position they took with reference to the legal validity of the agreement which they claim was made, by which they were entitled to one-half of all the moneys Jordan could be compelled to pay by the court or otherwise for alimony, either temporary or permanent, and they received the money under this agreement and expressed a willingness to pay over one-half thereof, it is obvious that no action would lie at the suit of Mrs. Jordan to recover the money payable to her under such agreement until after a demand thereof, and defendants' refusal or neglect to pay. We will proceed, therefore, to consider the validity of the second objection.

This is based upon section 9004 of Howell's Statutes, which reads as follows:

"That all existing laws, rules, and provisions of law, restricting or controlling the right of a party to agree with an attorney, solicitor, or counsel for his compensation, are repealed, and hereafter the measure for such compensation shall be left to the agreement, express or implied, of the parties."

Under this law defendants claim that their contract signed by plaintiff is legal and valid, and that they are entitled to retain one-half of the money they received from Mr. Jordan, above stated. I shall pass by the objections raised to the validity of the contract by counsel for plaintiff, based upon the incapacity of plaintiff at that time to contract on account of her being a married woman, and proceed to discuss the other objection, that the subject-matter of the contract was not capable of being assigned, and that it is void, also, as against public policy.

There is no question but that Mr. Jordan was possessed of ample property within the jurisdiction of the court to defray

the expenses of the suit for divorce against him. Section 6235 of Howell's Statutes provides :

"In every suit brought, either for a divorce or for a separation, the court may, in its discretion, require the husband to pay any sums necessary to enable the wife to carry on or defend the suit during its pendency."

So that there was provision made by which the solicitors could be compensated for their services in carrying on the suit. All that was necessary to be done was to make application to the court, and obtain its order.

Under this section, what is known as "temporary alimony" is usually allowed where the wife has no means of her own to support herself and her husband has property. The object of this statute, aside from the expenses of the suit, is to furnish to the wife suitable sustenance while the suit is in progress. It is plain that an allowance for this purpose is not assignable, and that it is against the policy of the law to permit the wife to bargain it away in advance of receiving it. The law allows it for a specified purpose, and a contract like the one under consideration, where one-half is stipulated to be paid over or retained by her solicitor, is a misappropriation of the fund, and opposed to the object and purpose of the statute.

In *Hackley v. Muskegon Circuit Judge*, 58 Mich. 454, the probate court had made an allowance for the support of the widow, to be paid out of the estate during the pendency of litigation, and Chamberlain, her attorney, claimed to be interested in the allowance under an agreement similar to the one under consideration, by which the widow had assigned to him all claims against the estate, and he was to have for his services all over $25,000 which he might recover ; and we held such fund, or the money payable to the widow for support, was not the subject of assignment, and did not pass to Chamberlain in virtue of his contract.

The law has provided that allowance may be made to carry on the suit, which includes whatsoever reasonable sums the services of the solicitor may be worth, and also the other expenses, as well as for her support, so that she shall stand

before the tribunal, which administers one law alike to the husband and wife, on an equal and common ground with him. It would be a fraud upon the court that makes these allowances, based upon the facts before it of the husband's ability and the wife's necessity, and also upon the husband who is called upon to pay, if the fund so decreed to the wife as her temporary alimony should be bartered away to her solicitors under the guise of "compensation" under a private contract with the wife. The allowance of temporary alimony is discretionary with the court, and it cannot be for a moment imagined that an allowance would be made if the court was apprised that one-half the sum allowed for her sustenance had been agreed to be paid over to her solicitors under a contract like that set up in this case.

Another section of the statute (How. Stat. § 6245) provides that where divorce is decreed the court may, in certain cases, further decree to her such part of the personal estate of the husband, and such alimony out of his estate, real and personal, to be paid to her in gross or otherwise, as it shall deem just and reasonable, having regard to the ability of the husband, and the character and situation of the parties, and all the other circumstances of the case ; while section 6247 authorizes the court to require sufficient security to be given by the husband for the payment thereof according to the decree, and to issue execution, and to sequester his real and personal estate, and to review the decree, and to alter or amend the decree whenever such court shall become satisfied of any error in the decree, or for any cause arising after the date of such decree.

Section 6248 allows the court, on petition of either party, to alter or revise such decree for alimony as to the amount of such alimony or allowance.

It will be seen from these enactments, as well as from the general nature and object of permanent alimony, that any contract made between the wife and her solicitor in advance of a decree for divorce and allowance of alimony. must be void upon the plainest reasons of public policy. It was held in *Perkins v. Perkins*, 10 Mich. 425, that a

decree for alimony vests no absolute right in the wife thereto. The power to decree alimony is statutory and incident to the jurisdiction in suits for divorce, and the statute prescribes the entire powers and regulations on the subject.

In fixing the amount and time of payment, the court is entitled to have all the facts which would influence its decision laid before it. Can it be supposed that the court would make an allowance to the wife of a gross sum for permanent alimony, to be paid by the husband out of his estate, if it was possessed of the fact that the wife had contracted to pay one-half or any other portion of what she should be awarded to her solicitor ?

Such contracts are against public policy for another reason. Public policy is interested in maintaining the family relation. The interests of society require that those relations shall not be lightly severed, and that families shall not be broken up for inadequate causes or from unworthy motives ; and where differences have arisen which threaten disruption, public welfare and the good of society demand a reconciliation, if practicable or possible.

Contracts like the one in question tend directly to prevent such reconciliation, and, if legal and valid, tend directly to bring around alienation of husband and wife by offering a strong inducement, amounting to a premium, to induce and advise the dissolution of the marriage ties as a method of obtaining relief from real or fancied grievances which otherwise would pass unnoticed. The evil pointed out is well illustrated in this case. Here every effort to effect a reconciliation was opposed and thwarted because it was for the interest of the solicitors under their contract that there should be no reconciliation.

We are all of opinion that the contract agreeing to give defendants one-half of the temporary and permanent alimony awarded by the court, or otherwise, is null and void, and, this being so, no demand previous to bringing suit was necessary, under the circumstances.

The defendants, under their plea of offset, offered evidence of the value of their services, and the jury, under the evi-

dence, have passed upon that question. Under the view taken as to the invalidity of the contract, the errors alleged to the charge of the court did not prejudice the defendants, and the judgment is affirmed.

The other Justices concurred.