[No. 5848. Decided January 31, 1906.]

JOHN LAWRENCE, *Respondent,* v. ALEXIA HALVERSON, *Appellant.*[1]

PARTNERSHIP—AGREEMENT FOR—EVIDENCE—SUFFICIENCY. There is sufficient evidence of a partnership agreement whereby the plaintiff was to perform the work and labor and the defendant to furnish the money to construct a house upon premises to be owned by them jointly, where it appears by the testimony of both parties that the land was bought by the defendant, who also furnished money to buy the materials for the house, and the house was built by the plaintiff pursuant to such an arrangement, the defendant admitting that originally the agreement was that she was to sell the house and the plaintiff was to "get his share when the property was sold."

1Reported in 83 Pac. 889.

PARTNERSHIP—TERMINATION. A partnership agreement for the ownership of a house and lot standing in the name of one party cannot be summarily terminated by such party on becoming dissatisfied with the manner of performance of the other party.

EQUITY—JURISDICTION—RETAINING FOR ALL PURPOSES. Where a court of equity acquires jurisdiction of a cause for one purpose, it retains it for other purposes necessary to a final determination of the whole controversy, if they are germane to, or grow out of the matter, and are not distinct legal rights not affected by the adjudication of the equitable questions.

EQUITY—SPECIFIC PERFORMANCE OF PARTNERSHIP AGREEMENT—RELIEF. In an action for the specific performance of a partnership agreement for the joint ownership of premises the legal title to which is held by the defendant, a decree adjudging that the plaintiff be declared the owner of an undivided half interest in the property on condition that a certain balance be paid to the defendant, although the plaintiff is under no obligation to pay the same, is within the equitable powers of the court, on the principle that having acquired jurisdiction for one purpose, it could maintain it for other purposes necessary to a final determination of the controversy which were germane thereto, and grant any relief to which the parties might be entitled.

JUDGMENT—RELIEF CONDITIONAL ON PAYMENT—WHEN TO BE MADE COMPULSORY. Where, in an action between partners, it is found that the plaintiff is entitled to a half interest in certain premises, upon payment to the defendant of a balance due, it is error to enter a decree to that effect, without compelling prompt payment, allowing the plaintiff to speculate in the value of the property, and the decree will be made compulsory within thirty days, with execution for the amount at the end of such time.

Appeal from a judgment of the superior court for King county, Griffin, J., entered June 23, 1903, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for the specific performance of a copartnership agreement. Modified.

*Saulsberry & Stuart,* for appellant.

*S. D. Wingate,* for respondent.

DUNBAR, J.—The complaint alleged substantially, that the plaintiff was a contractor and builder in the city of Seattle; that in the month of March, 1903, an oral contract of co-

partnership was entered into between the plaintiff and defendant, by the terms of which contract it was agreed that the copartners should purchase a certain lot described in the complaint; that plaintiff should improve such lot by grading it and erecting thereon a house, the plaintiff to perform the work and the defendant to furnish such sums as should thereafter be agreed upon between the parties, and that said house and lot should be owned by the plaintiff and defendant as copartners; that in pursuance of said contract the plaintiff entered into a contract for the purchase of the aforesaid lot, paid $30 on account, and in consideration thereof; and that, on the 11th day of April, 1903, said contract of purchase was consummated by the execution of a deed for the conveyance of the aforesaid lot to defendant, upon the payment by the defendant of the sum of $695, being the balance due on account of the consideration money; that it was orally agreed by and between the plaintiff and the defendant, immediately after the execution of the deed to the defendant, that the plaintiff, as a part of his share to be contributed toward the partnership, should grade the lot and excavate for and put in a cement foundation upon which to erect the house, and that such grading was done and the foundation made; that it was afterwards further agreed that a certain double flat building should be erected to cost about $2,800, of which amount the defendant should furnish $1,000 upon the demand of the plaintiff as the work progressed, and the plaintiff should furnish the plans together with lumber, material, labor, etc.; that in accordance with the said agreement the work of erecting the building was begun and progressed, with certain changes mutually agreed upon; that the plaintiff had carried out his part of the partnership agreement in erecting the said building; that the defendant had expressed herself as well satisfied with the work; that on January 5, 1905, the defendant took possession of the building and lot, claiming absolute title and ownership therein, has had possession since, refused to account to plaintiff for his interest or profits in the prop-

erty, and denied any right or interest of the said plaintiff in
the property, and refused to settle up in any manner whatever
or to convey to the plaintiff his undivided one-half interest in
said property. The prayer is, for the dissolution of the part-
nership; that the defendant be required to pay to plaintiff
the amount which shall be found due him on account of the
use and occupation of the said building and lot; that the de-
fendant be directed and required to pay to the plaintiff an
amount equal to one-half of the costs of the improvements,
and be directed and required to grant and convey one equal
undivided one-half interest in and to the land in dispute.

A demurrer was interposed to the amended complaint. The
record does not show what disposition was made of it, but
presumably it was denied, as the defendant interposed an
answer to the amended complaint. The answer is, in effect,
a general denial of all the essential allegations of the com-
plaint. The defendant denied that she took possession of
the property on January 5, 1905, but said that she had con-
tinuous possession of the property since she bought the same
in 1903, she having admitted that she had bought the same
and paid for it herself; in short, denied any right or interest
of the plaintiff in or to said property; admitted that no ac-
counting was made, but denied that she was under any obliga-
tion to make any accounting; and alleged that the plaintiff
had no interest, right, or title in one undivided one-half, or
any other interest, in said house and lot. Upon the trial by
the court the facts were found substantially as alleged in the
complaint, with the addition of the fact that, on the question
of the accounting, $631 was due the defendant from the plain-
tiff, by reason of the amount furnished by each and of the pay-
ing of the taxes and of the bills paid generally in the prosecu-
tion of the work; and the judgment was that the plaintiff,
upon the payment of the sum of $631 to the defendant, was
entitled to a decree declaring, adjudging, and decreeing him
the owner of an equal undivided one-half interest in and to all
that certain tract of land described in the complaint, free from

any and all incumbrances. From this judgment this appeal is taken.

An examination of this record shows conclusively to our minds that the court was warranted in making the findings of fact which it did make. The defendant at first, in harmony with her answer, denied any interest of the plaintiff in the land, testified that no partnership agreement had ever been entered into between them in relation to the land, and that the respondent had no interest in the matter excepting that she had agreed to give him a certain amount of money for building a certain kind of a house. This position was afterwards abandoned, and the appellant testified, in so many words, that the original idea was that there was a partnership ownership of the lot, and that plaintiff was to contribute half, and they were to improve the lot as they could agree; and she finally testified as follows, in answer to the question:

"Will you just state to the court—probably the court is informed but I am not and I would like to know—just exactly what the terms of that contract were. What were the terms of that contract, just as briefly as you can? I was to furnish $1,000 cash; he was to put up a two-story, of five rooms in each story, building in first class way and manner, and keep it free from all incumbrances and debts, and I to sell that house and he would get his share when that property was sold."

The testimony of the appellant, as a whole, outside of the testimony of the respondent and his witnesses, shows conclusively that there was a partnership agreement between them, that the house was started and practically completed under the terms of the agreement, and that the appellant finally became dissatisfied, by reason of the character of material furnished by the respondent and the character of the work which she claimed he was doing, and the changes made in the original plans, and summarily ended the contractual relations between the appellant and respondent, by going into the house and taking possession of the same and, as she says,

throwing the appellant's tools out of the house. It is hardly necessary to say that a partnership cannot be terminated in this manner.

It is, however, technically contended by the appellant that, inasmuch as this was an action for a specific performance of a contract, and the court found that there was an obligation on the part of the respondent to pay the appellant $631, the performance of the contract could not be adjudged. It makes no difference what name may be given to an action under our system of pleading, whether in this case the action is denominated an action for specific performance or an action for an accounting, or for the dissolution of a partnership. The prayer in this case seems to be for all three. Our code provides what the pleadings shall consist of in an action, whether that action be termed an action at law or an action in equity. The complaint is a plain and concise statement of facts constituting a cause of action, with a demand for the relief which the plaintiff claims. But it does not necessarily follow that, if the plaintiff demands relief it is not entitled to under the statement of facts set out in the complaint, it will not be awarded any relief at all. Whatever relief it is entitled to under the facts stated, the court will award. Equity is frequently invoked for the very purpose of preventing a multiplicity of suits. The rules governing it are more flexible than the rules of law, and justice can be done the parties in one action. It is frequently said that equity needs no other court to finish its work, because of the rule that, when it once takes jurisdiction of a case, it will maintain jurisdiction to the end and adjudicate the rights of the parties. When a court of chancery acquires jurisdiction for any purpose, it will, as a general rule, proceed to determine the whole cause, although in so doing it may decide questions which, standing alone, would furnish no basis of equitable jurisdiction. Bispham's Principles of Equity (6th ed.), § 37. It is a well established rule that equity, having taken jurisdiction for one purpose, will retain it for others necessary to final settlement of all

matters involved in the litigaion between the parties growing out of and connected with the subject-matter of the suit, and will decide all incidental matters necessary to enable it to make a final determination of the whole controversy (1 Beach, Modern Equity Jurisp. § 21); the only limitation being that the matters adjudicated must be germane to, or growing out of, the matter of equitable jurisdiction, and not distinct legal rights not affected by adjudication of the equitable questions involved. This liberal doctrine has been followed by the courts, in all the code states especially, and also by this court in innumerable cases. We held, in *Dormitzer v. German Sav. etc. Society*, 23 Wash. 132, 62 Pac. 862, that the plaintiff in an equitable action would be accorded such relief as he was entitled to, even if the bill be given a wrong name. And in *Jordan v. Coulter*, 30 Wash. 116, 70 Pac. 257, that where defendant set up a contract and asked its specific performance by way of cross-complaint to an action against him for conversion, the court was warranted in decreeing a cancellation of the contract when it appeared to be nonenforcible, although plaintiff did not ask for such relief, under the rule that, when equitable jurisdiction attaches for any purpose, it extends to the whole controversy. And in accordance with this principle we said, in *McKay v. Calderwood*, 37 Wash. 194, 79 Pac. 629,

"We have frequently decided, in principle, that, under the provisions of the code, litigants cannot be expelled from the court at one door under the burden of accumulated costs, with the admonition to enter the court at another door with another accumulation of costs; but that, whatever rights the plaintiff has under the complaint, conceding its allegations to be true, will be tried out by the court, and the proper judgment in the cause rendered."

So that, under the allegations of this complaint, which were justified by the testimony, the court was authorized to enter the judgment which it did enter in the cause.

It is, however, contended by the appellant, and we think

with some show of reason, that the court should fix some definite time when the money due appellant should be paid; that inasmuch as it is not compulsory upon the respondent to pay at any time, it allows him to speculate in the value of the property, and that, if the property should become valuable hereafter, he could repay the appellant the $631 and have a deed for half of the same, or if he did not consider that the property was worth that much, there is nothing compelling him to make the payment. We think it would be nothing more than justice to compel the respondent to promptly comply with the judgment of the court in the matter of paying the amount found to be due from him, and the judgment will therefore be modified to the extent that the respondent shall, within thirty days from the filing of the remittitur in the lower court, tender or pay to the appellant the sum of $631 lawful money of the United States; and, if not so paid, execution shall issue for said amount in favor of appellant, to be collected in the manner provided by law, either out of other property of the respondent, or by the sale of the respondent's interest in the property in controversy. As so modified, the judgment is affirmed with costs to the respondent.

MOUNT, C. J., HADLEY, FULLERTON, RUDKIN, ROOT, and CROW, JJ., concur.