[No. 16168. Department One. February 19, 1921.]

ELIZABETH BECK et al., Appellants, v. CARRIE R. BOUCHER et al., Respondents.[1]

PARTITION (17)—INCIDENTAL RELIEF. In an action for partition, in passing upon a claim to the land, the court may determine a claim for legal and professional services rendered to the claimant, and give full and complete relief to all parties to the controversy.

ATTORNEY AND CLIENT (41)—CONTRACTS FOR COMPENSATION—CONTINGENT FEES—VALIDITY. An agreement for contingent attorney's fees, which was solicited, contrary to our code of ethics, Rem. Code, § 2370, entered into without fraud or misrepresentations, is not therefore void as against public policy, in view of Id., § 474, leaving the measure or amount of attorney's fees to the agreement of the parties.

ESTOPPEL (52, 53)—EQUITABLE ESTOPPEL—ACCEPTANCE OF BENEFITS —CONTRACTS. A client who permits an attorney to spend time and money under a contract for a contingent fee and accepts the benefits of the contract is estopped to assert its invalidity on the ground that it was solicited and against public policy.

ATTORNEY AND CLIENT (40)—CONTRACTS FOR COMPENSATION—CONSTRUCTION AND OPERATION. An attorney's contract for twenty per cent of the share of an estate that might be recovered through litigation or otherwise, covers both real and personal property.

SAME (43-44-1)—COMPENSATION—ACTIONS—JUDGMENT. When, in an action for partition, a client repudiated her contract with an attorney to pay him twenty per cent of the share of the estate recovered, the attorney is entitled to personal judgment for the contract amount, and to have the same impressed upon her interest in the real estate.

Cross-appeals from a judgment of the superior court for Pierce county, Card, J., entered February 26, 1920, upon findings in favor of the defendants, in an action for partition. Affirmed on plaintiffs' appeal and reversed on defendants' cross-appeal.

O. S. Galbreath, for appellants.

Henry Arnold Peterson, for respondents.

[1]Reported in 195 Pac. 996.

HOLCOMB, J.—This action was brought by appellants, as plaintiffs, against the respondents, as defendants, to partition lands acquired by appellants and respondent Carrie R. Boucher by inheritance, and bringing in the other defendants as parties who claimed and as. serted adverse interests. The land originally was the property of one John W. Roberts, who died intestate in Pierce county, Washington, on May 12, 1912, and whose estate was duly probated in the superior court for that county, and the lands here in question distributed as follows: One-fourth each to Elizabeth Beck and Catherine Rossiter, nieces, and one-half to George W. Roberts, a brother of deceased, who has since died.

Shortly after the death of John W. Roberts, and in June, 1912, George W. Roberts filed a petition in the superior court for Pierce county, for letters of administration upon his estate, claiming that he, George W. Roberts, was the sole and only heir, which claim of sole heirship was called to the attention of Elizabeth Beck, who afterwards entered into a contract with B. A. Knight, whereby Knight was to obtain for Mrs. Beck her share of the property left by the deceased Roberts, and in consideration for such services as Knight would perform in so acquiring her estate, she agreed as follows:

"Elizabeth Beck hereby employs said attorney B. A. Knight to assist her in obtaining for her her alleged share as an heir in the estate of John W. Roberts, deceased, of Tacoma, Washington, and agrees to pay said attorney B. A. Knight for such services twenty per cent (20%) of the share that may be found to belong to said Elizabeth Beck through litigation or otherwise in full payment for such services and expenses incurred in connection therewith.

"It is agreed on the part of said attorney B. A. Knight that he will faithfully undertake to obtain for

said Elizabeth Beck her share, if any, in the said estate of John W. Roberts, deceased, of Tacoma, Washington, and in the prosecution of said claim will advance his own traveling expenses and all expenses incurred thereby.

"It is further agreed on the part of attorney B. A. Knight that he will accept from said Elizabeth Beck twenty per cent (20%) of the moneys obtained for said Elizabeth Beck from the estate of John W. Roberts, deceased, same to be in full settlement of all attorneys fees and all costs and expenses incurred in the prosecution of the said claim of said Elizabeth Beck as an heir of said John W. Roberts, deceased.

"It is mutually understood and agreed by and between the parties hereto that this contract is to supercede and end all contracts heretofore made between the parties hereto concerning the subject matter herein involved."

The foregoing agreement was dated June 4, 1913. On June 30, 1914, Mrs. Beck attempted to revoke the foregoing contract, which revocation was not recognized by Mr. Knight.

On February 25, 1914, Mr. Knight, having received Mrs. Beck's distributive share of the personal property of the Roberts' estate, eighty per cent thereof was delivered to her, and the remaining twenty per cent retained by Mr. Knight, in accordance with the above quoted agreement. The real estate was not divided but went to the heirs as tenants in common according to their several interests therein.

On April 3, 1916, Mrs. Beck did in fact execute a deed of conveyance to Knight covering an undivided one-fifth interest of the real estate inherited by her from John W. Roberts, but such deed was not delivered to Knight, but was left with William T. Laube, her attorney.

Without recognizing any right of Knight to any portion of the real estate involved herein, Mrs. Beck, with

others, in September, 1918, commenced the partition proceedings for the setting apart to each of the heirs of John W. Roberts of his portion of the real estate, and making B. A. Knight and "Jane Doe" Knight, his wife, parties defendant, which action finally went to trial on the third amended complaint of plaintiffs, an amended answer and cross-complaint of defendants, and a reply thereto of plaintiffs.

On March 14, 1918, Elizabeth Beck had transferred all of her interest in the lands involved to her children, Louis E. Beck, Harry A. Beck, and Alice Bishop, by quitclaim deed, ignoring the claim of interest therein of Knight.

The third amended complaint alleges that Knight claims some interest in the real estate, but that the basis of his claim is unknown to plaintiffs, and prays for the distribution of the estate. By his amended answer and cross-complaint, Knight pleads the contract hereinbefore quoted from, and claims title to one-fifth of Mrs. Beck's original share of the real estate, and alleges that the sale by Mrs. Beck of all of her interest in the estate to her children was fraudulent and void. Plaintiff's reply to the amended answer and cross-complaint of the defendants admits the signature of Mrs. Beck to the contract pleaded in the answer and cross-complaint, but denies that it was intended to or did convey any interest in the real estate; that the deed to the children was not fraudulent; that the contract pleaded in the answer and cross-complaint was obtained through misrepresentation on the part of Knight; and alleges that Elizabeth Beck revoked the contract and that Knight agreed thereto.

The plaintiff moved for judgment on the pleadings, which motion was denied by the trial judge. Trial of the cause on the merits resulted in a decree as follows:

"That the said B. A. Knight and Jane Doe Knight, his wife, are not, nor is either of them, the owner or owners of any right, title or interest in and to the lands herein sought to be partitioned, and they have not, nor has either of them, any right, title or interest therein, save and except such as they or either of them acquire or may acquire by reason of this decree and judgment as hereinafter set forth.

"It is further ordered, adjudged and decreed that that certain contract made and executed on the 14th day of June, 1913, by and between B. A. Knight and Elizabeth Beck providing for the performance of legal and professional services, be and the same hereby is declared to be invalid and unenforcible.

"It is hereby further ordered, adjudged and decreed that B. A. Knight have and recover against the said Elizabeth Beck the sum of $1,273.64, and judgment is hereby awarded against Elizabeth Beck and in favor of B. A. Knight in said sum."

It was further decreed that the deed of conveyance from Elizabeth Beck, conveying to the grantees Louis E. Beck, Harry A. Beck and Alice Bishop all of her right and title in the lands here in controversy, which deed bears date the 2d day of April, 1917, is fraudulent and void and of no legal effect whatsoever and constitutes no encumbrance of any kind or character as against the decree and judgment rendered in favor of B. A. Knight and against Elizabeth Beck. It was also held in the decree that the certain agreement referred to in the deed of conveyance as having been executed of even date therewith was fraudulent and void and of no legal effect whatsoever, and constituted no encumbrance as against the decree and judgment in favor of B. A. Knight; and that B. A. Knight recover his costs and disbursements.

From that portion of the above decree awarding a money judgment in the sum of $1,273.64 to B. A. Knight, the awarding of costs and disbursements to

B. A. Knight, and declaring void the deed from Elizabeth Beck to her children, the plaintiffs have appealed. From that portion of the decree holding that Knight and wife had no interest in the property to be partitioned, that the contracts of employment were void and unenforcible, that Mr. Knight was entitled to a money judgment on *quantum meruit* against Elizabeth Beck in the sum of $1,273.64 only, the defendants have appealed.

A contract had previously been entered into between Mrs. Beck and Knight on June 20, 1912, whereby Knight was to obtain Mrs. Beck's inheritance in the estate of John W. Roberts, for thirty-three and one-third per cent thereof. Services under this contract continued until December, 1912, when Mrs. Beck sought to revoke the contract for the reasons, as stated by her, that she was of the opinion that Mr. Knight was working for a Mrs. Snyder while at the same time having a contract with Mrs. Beck. The Mrs. Snyder referred to had originally brought the parties together, and Mrs. Beck had made the contract in Mr. Knight's office in the presence of Mrs. Snyder, after having been introduced to him by Mrs. Snyder, who had read a notice of the death of John W. Roberts in a paper. The same Mrs. Snyder afterwards attempted to establish a claim of her own as a pretended grand-daughter of John W. Roberts, deceased. The attempted revocation by Mrs. Beck went unrecognized by Knight, who continued to perform the duties of attorney for Mrs. Beck under the original contract.

On June 3, 1913, Mrs. Beck wrote to Knight a letter in which she stated that, as Knight had agreed to throw off ten per cent of his contract price for fees and expenses, if he was willing to draw a new contract to that effect, to let her know by return mail. Mrs. Beck had employed a firm of attorneys by the name of

Harper & McMynn to advise her in the matter, who advised her that Knight had rendered her valuable services and was entitled to his contract. Mr. Knight, however, met Mrs. Beck's request by agreeing not only to throw off ten per cent, but to reduce his compensation thirty-three and one-third per cent, making the second contract twenty per cent of the amount of the estate recovered. The new contract being the contract set forth in the early part of this opinion, was therefore drawn up, and was executed by Mrs. Beck. Mrs. Beck admitted that the second contract was entered into by her after she had received the advice of attorneys Harper & McMynn, and of her brother-in-law, Mr. Rossiter, whose wife was also her sister and one of the heirs of Roberts and of her son.

The court found that the second contract, dated June 4, 1913, was made at the special instance and request of Mrs. Beck, and was executed by her and by Knight; that prior thereto on about June 20, 1912, they had made and entered into a certain contract for specific legal services to be performed for Mrs. Beck by Knight, which contract was substantially alike in terms to that above referred to, except that the contingent percentage to be paid Knight as compensation for his services was therein fixed at thirty-three and one-third per cent instead of twenty per cent as provided for in the second contract; that the first contract of employment was solicited by Knight from Mrs. Beck, thus being contrary to the code of legal ethics of Washington, and contrary to the laws of Washington (Rem. Code, § 2370); and therefore that the first contract was invalid and unenforcible; that, while the second contract, dated June 4, 1913, above referred to, was executed at the instance of Elizabeth Beck, the services thereunder were substantially a continuation of the legal services begun under the first contract, and

therefore the last contract is likewise invalid and un-
enforcible, and no recovery can be had thereon.

The court also found, upon the almost uncontro-
verted evidence, that Knight did not conceal from, nor
in any manner misrepresent, any facts to Mrs. Beck,
nor was any fraud or deception practiced upon Mrs.
Beck, or in the making of the contracts or either of
them, nor in connection with the services thereunder.

The court correctly proceeded upon the theory that
an action for the partition of land is equitable in its
nature, and in passing upon a claim to any or all of
the land sought to be partitioned, the court would hear
and consider all the evidence bearing upon the claim,
if any, against Mrs. Beck for legal and professional
services rendered her; and having assumed jurisdic-
tion over the subject of the controversy and the par-
ties thereto, and the interests of the parties requiring
final disposition of the controversy, arrive at and grant
full and complete relief whether legal or equitable.
And the trial of the cause having proceeded upon that
theory, the court made its findings and conclusions and
decree that the appellants had fraudulently conveyed
the land; that Knight could not enforce his written
contract; but that he had rendered valuable services
for which he was entitled to receive the amount ad-
judged.

It will be observed that the court conceived that the
contract between Knight and Mrs. Beck was illegal
because the employment had been solicited. It is true
that our statute, Rem. Code, § 2370, forbids the solici-
tation of employment by an attorney in any suit pend-
ing or prospective, and the code of ethics of the Ameri-
can Bar Association, adopted as the statutory code of
ethics of this state, also denounces the solicitation of
business by an attorney, unless the personal relations
so warrant; but assuming that the original contract

was tainted with illegality, after Mrs. Beck had attempted to revoke the original contract, she allowed the attorney to proceed for six months and then entered into a new contract for a new rate of compensation; allowed him to proceed until the matter had been finally determined in her favor by and through the services of the attorney with whom she made both contracts. We have another statute, § 474, Rem. Code, which provides that the measure or amount of compensation of attorneys and counsellors shall be left to agreement, expressed or implied, of the parties.

Although an attorney may be disbarred, under the statutory code of ethics, for soliciting business in this state, or may be prosecuted for barratry for soliciting business, it is not against public policy for the parties, when they get together and agree, without fraud, deception, or misrepresentation on the part of the attorney, as was found by the court and abundantly established by the record, to make a contract in writing determining the compensation to be received by the attorney. On the contrary, it is supported by public policy. It is true that such contracts will be scrutinized by the courts on the grounds of public policy because of the greater ability and learning of the attorney, and the fiduciary character of the relations; but where they have, at arm's length, arrived at a contract, and the contract has been acted upon and fully performed, and the client has received full benefit to be derived from the contract, we see no reason for penalizing the attorney by taking away from him a part of the compensation agreed upon between him and his client, with full knowledge of the facts, unless the compensation agreed upon is wantonly excessive. That is not the case here. The evidence here is that the services performed by Knight were very voluminous, and that he skillfully and ably performed them, and that he was

loyal in every respect to the interests of his client, and no criticism whatever could be found against his professional conduct in the matter entrusted to him.

The validity of a contract or retainer in whatsoever form or howsoever effected, whether sought by client or lawyer, is determined by the same rules of law as other contracts; and having the mutual assent of the parties, it withstands impeachment, unless unlawful,— i. e., (1) contrary to the positive law; (2) contrary to positive morality; (3) contrary to public policy. Weeks, Attorneys at Law, § 364.

As heretofore observed, this contract cannot be held impeachable under any of these standards, at least as to the second contract. The "clean hands," invoked by a far cry to excuse appellants from the payment of their lawful debt, can have no application unless respondents' contracts with their clients have defrauded them. Snell, Equity, 38, 39; 1 Pomeroy, Equity Jur. (4th ed.), § 400.

We may also consider that Mrs. Beck, under the record in this case, is estopped to deny the validity of the contract by reason of her having accepted all the benefits of the contract and having retained Knight as her attorney to secure for her all the benefits of the contract without objecting to its validity, and of having recognized the validity of the contract by making the quitclaim deed to the one-fifth interest in the real estate acquired for her by Knight, even though that quitclaim deed was not delivered.

The court found, largely upon the testimony of Mr. William T. Laube, an attorney who had for a time represented Mrs. Beck, that the only consideration for the execution of the deed was the settlement of Knight's claim against Mrs. Beck, and that the same was left with her attorney Laube to be used only in the event of a certain proposed partition being consummated. That

deed gave to Knight a one-fifth interest in the real estate, which was what he claimed.

The conduct of Mrs. Beck in acquiescing in the further proceedings by her attorney, Knight, and in his spending his money and labor in procuring an adjudication of her interests which resulted in every way favorable for her, certainly ought to estop her. *Adams v. Schmidtt*, 68 N. J. Eq. 168, 60 Atl. 345.

We therefore conclude that the trial court erred in holding that the contract of Knight and Mrs. Beck was invalid and unenforcible, and that his services were not to be measured by the contract.

It remains only to construe the contract. The contract provided that Mrs. Beck employed the attorney, Knight, to assist her in obtaining for her her alleged share as an heir of the estate of John W. Roberts, deceased, for which she agreed to pay her attorney, Knight, for such services twenty per cent of the share that may be found to belong to Mrs. Beck, through litigation or otherwise, in full payment for such services and expenses incurred in connection therewith.

Appellants contend that the contract only contemplated the payment of twenty per cent of the moneys and personal property which might be recovered for Mrs. Beck, and that of the moneys and personal property distributed Knight had received his full share. It seems to us too plain for argument that the contract provided for the payment of twenty per cent of whatever share may be found to belong to Mrs. Beck, through litigation or otherwise, whether real, personal or mixed of the estate of John W. Roberts. It is plain and unambiguous. It speaks for itself. The contract being valid and enforcible, the compensation to be awarded Knight is that provided for in the contract, and that is twenty per cent of the entire estate recovered for Mrs. Beck.

Appellants contend, however, that in any event Knight is not entitled to personal judgment for the sum of his attorney's fees against Mrs. Beck, or her interest in the estate. We think this position is untenable. She having repudiated the contract and attempted to get the subject-matter out of her name, Knight is entitled to a judgment for the amount of his contract services, and that the sum be impressed upon her interest in the real estate and deducted from the proceeds thereof if sold.

It is true that, under the contract of employment as averred and proven, the attorney was to look to the proceeds alone for his compensation; and it will be conceded that, if the other party had recognized the agreement and was ready and willing to comply with its terms on her part, she might possibly be exempt from any personal liability. But it by no means follows that she can repudiate her obligations under the contract and refuse to permit the other party to share in the proceeds, and, notwithstanding, insist that defendant's only remedy is to comply with the strict terms of the contract on his part. By refusing to carry out the contract, she incurred a personal liability for such damages as Knight may have suffered by reason of such refusal; or, by her conduct in the matter, she furnished Knight an additional remedy of which he may avail himself if he so elects. *Hazeltine v. Brockway*, 26 Colo. 291, 57 Pac. 1077. So in this case, Knight has two kinds of relief: first, the right to actual performance on the part of Mrs. Beck by compelling her to deliver a conveyance of one-fifth of her interest in the real estate partitioned to her of the admitted value of twelve thousand dollars; or the right to compensation in money for the amount of his contract services remaining unpaid, to wit: the sum of two thousand four hundred dollars, by reason of the failure of Mrs. Beck to

deliver him such amount. *Brodek v. Farnum,* 11 Wash. 565, 40 Pac. 189; *Hanna v. Reeves,* 22 Wash. 6, 60 Pac. 62; *Lawrence v. Halverson,* 41 Wash. 534, 83 Pac. 889; *Womach v. Sandygren,* 96 Wash. 12, 164 Pac. 600.

The judgment is affirmed upon plaintiffs' appeal, reversed upon respondents' Knight and wife's cross-appeal, and remanded to the lower court with instructions to proceed in conformity with this opinion. Cross-appellants will recover all costs.

PARKER, C. J., FULLERTON, MACKINTOSH, and BRIDGES, JJ., concur.