[No. C. D. 4075.  *En Banc.*  March 10, 1953.]

## In the Matter of the Proceedings for the Discipline of JOSEPH B. SMITH, *an Attorney at Law.*[1]

*A. Vernon Stoneman,* for board of governors.

*Arthur E. Simon,* for respondent.

[1]Reported in 254 P. (2d) 464.

HAMLEY, J.—This disciplinary proceeding was instituted on April 2, 1951, when Washington state bar association (association) filed charges of professional misconduct against respondent, Joseph B. Smith. Smith was admitted to the bar of the state of Washington in 1925, and maintains his office at Seattle, Washington.

The charges pertain to respondent's conduct in relation to his client in a certain action for divorce. In January, 1950, Mrs. Nellie Keller (now Mrs. Nellie Keller Shirey) engaged respondent to represent her in a divorce action which had been instituted by her husband. On February 9, 1950, respondent prepared and both parties executed a written agreement, the operative portion of which reads as follows:

"I Nellie Keller agree to pay Joseph B. Smith, a sum in addition to the amount he would be allowed as fees by the opposing side, equal to Twenty Percent (20%), or in other words I will pay him 20% in addition to the amount the opposing side is willing to allow as attorney fees for his services. It is also agreed that I shall not have to pay him any fees unless he makes a recovery or settlement.

(Sd.) NELLIE KELLER.

"I agree to represent Nellie Keller according to the terms above and to do my best to make as large recovery as is possible for her. (Sd.) JOSEPH B. SMITH."

Pursuant to this agreement, respondent prepared, served, and filed a cross-complaint for divorce. He also procured two restraining orders and orders to show cause; carried on certain investigations in Tacoma, Washington; participated in negotiations which led to the preparation and execution of a property settlement agreement; and secured a divorce for Mrs. Keller on her cross-complaint, the proceeding being then uncontested.

During the course of the proceedings, and pursuant to court order, Mr. Keller paid three hundred dollars to Mrs. Keller as temporary support money, and seventy-five dollars to respondent as attorney's fees. Under the terms of the property settlement agreement, Mr. Keller paid Mrs. Keller an additional sixteen hundred dollars as a compro-

mise of the property rights as to separate and community property, and "including support allowance, alimony and attorney fees of the said Nellie Keller."

Respondent and his client then had a heated discussion as to the amount of attorney's fees to be paid to him, and regarding reimbursement to him for certain personal loans he had made to Mrs. Keller. The result was that respondent retained $625, which, according to his testimony, included reimbursement for loans and expenses and an attorney's fee of $454.50.

Mrs. Keller then complained to the association. Concurrently, she instituted a civil suit against respondent in the superior court for King county, to recover $550 alleged to have been "unlawfully and feloniously converted" by respondent in connection with the transactions referred to above.

The association served a complaint upon respondent, charging that he had been guilty of professional misconduct. The complaint states two grounds for disciplinary action. The first is that, in entering into a contingent fee agreement with a client involving the rendition of professional services in a divorce action, respondent was guilty of conduct unbecoming a lawyer, and of a breach of the canons of professional ethics. The second ground stated in the complaint is that, in charging the "unconscionable" fee of $550 for professional services rendered in that case, respondent violated his oath and duties as an attorney and the canons of professional ethics.

A hearing was conducted before a trial committee, which thereafter made the following report to the board of governors of the association concerning the charges referred to above:

"I. That attorney Joseph B. Smith entered into a written contract to represent a party in a divorce action in which it was agreed that he was to receive a contingent attorney fee of twenty per cent of the amount recovered in the action for his client in addition to the amount allowed as attorney fees by the opposing side, and that such agreement was in violation of the code of ethics of the profession and previous

rulings of the Washington State Board of Governors interpreting the canons of ethics and prohibiting such contingent fee agreements in divorce actions. Such agreement was a violation of his duties and obligations as an attorney.

"II. That the attorney fee actually charged and retained by attorney Joseph B. Smith in such case, while not unconscionable was excessive considering the nature and extent of his legal services and the results obtained for his client."

The trial committee report contains two additional paragraphs in which it is stated that respondent was, in other respects, guilty of professional misconduct in relation to his client in the divorce action. Since, however, these paragraphs relate to matters not referred to in the complaint, we do not notice them further in this opinion.

The trial committee closed its report with the recommendation that respondent's conduct would not warrant suspension or disbarment, but did warrant a reprimand. This report was considered and approved by the board of governors. Respondent was thereafter notified to appear before the board of governors to receive a reprimand.

The form of reprimand contains a place for respondent to signify whether he accepts or declines the reprimand. By its terms, acceptance of the reprimand would constitute an admission that the recitals contained in the reprimand are true and correct. It would also signify consent to having the reprimand become a part of respondent's permanent record, to be considered in any future disciplinary action.

Respondent advised the board of governors that he did not consider himself guilty of any wrong, and would not accept the reprimand. The board thereafter reaffirmed its previous action and submitted its report to this court "for such disposal as it deems warranted."

Two questions are presented for our consideration, one of which has to do with the asserted charging and acceptance of excessive fees. It will be observed that the report of the trial committee expressly disavows the allegation of the complaint that the fee received was "unconscionable." Instead, it is asserted that the fee was "excessive," consid-

ering the nature and extent of the services rendered and the results obtained for respondent's client.

■ Respondent and his client entered into an express contract as to fees. However, for reasons hereinafter set out, respondent's claim to the fees actually retained must rest, not upon the terms of an express contract, but upon *quantum meruit*. The gist of respondent's claim is thus the reasonableness of the fee charged. The place to determine any controversy between attorney and client as to the reasonableness of fees claimed under *quantum meruit* is in a civil action at law. Such an action is here pending. Under such circumstances, the use of disciplinary proceedings to determine whether or not a fee charged or collected is reasonable is wholly inappropriate. See *Herrscher v. State Bar of California*, 4 Cal. (2d) 399, 49 P. (2d) 832.

We are therefore of the view that, when the trial committee and the board found that the fee here retained was not unconscionable, the disciplinary proceeding, in so far as it relates to the amount of fee, should thereupon have been terminated. The determination that the fee retained was "excessive" therefore cannot serve as a basis for the recommended reprimand.

■ It may also be noted that this determination by the trial committee and board is ineffectual for another reason. The rules for discipline of attorneys contemplate that, in reviewing matters of this kind, the supreme court is to have the benefit of the board's written findings. Rule 43, Discipline of Attorneys, 34A Wn. (2d) 196. Here we have no findings as to the facts, but only the legal conclusion that, considering the nature and extent of the services and the results obtained, the fee was excessive.

This brings us to the second and more important question presented in this proceeding. In entering into the contingent fee contract referred to above, was respondent guilty of professional misconduct, and if so, was the proposed reprimand appropriate?

It will be observed that the twenty per cent mentioned in the portion of the contract quoted above is not referenced

to anything. The testimony indicates, however, that respondent construed the agreement as entitling him to twenty per cent of all sums received by Mrs. Keller, whether in the form of temporary support money paid by order of the court or in connection with the property settlement. It is also to be noted that the property settlement itself provides that the sum therein agreed upon is to be paid in lieu of support allowance, alimony, and attorney's fees, as well as in compromise of the respective property rights of the parties.

The only canon of professional ethics which relates specifically to contingent fees is Canon 13, *supra*, reading as follows:

"A contract for a contingent fee, *where sanctioned by law*, should be reasonable under all the circumstances of the case, including the risk and uncertainty of the compensation, but should always be subject to the supervision of a court, as to its reasonableness." (Italics ours.)

In *Beck v. Boucher*, 114 Wash. 574, 195 Pac. 996 (action for partition), the same rule is announced without reference to Canon 13. See, also, *Hardman v. Brown*, 153 Wash. 85, 279 Pac. 91 (collection of creditor's claim); and *Hamlin v. Case & Case*, 188 Wash. 150, 61 P. (2d) 1287 (claim for unpaid wages and cash).

Neither Canon 13 nor any other canon of professional ethics is helpful in determining whether a contingent fee contract in a divorce action is "sanctioned by law."

The general statute relative to the charging and collection of attorneys' fees is RCW 4.84.010 (Rem. Rev. Stat., § 474), which reads as follows:

"The measure and mode of compensation of attorneys shall be left to the agreement, expressed or implied, of the parties, but there shall be allowed to the prevailing party upon the judgment certain sums by way of indemnity for his expenses in the action, which allowances are termed costs."

This statute is applicable where the legal services are to be rendered in connection with an action for divorce. Thus,

where an attorney and his client involved in such a suit enter into a *lawful* agreement as to fees, it is binding upon the parties and may not be modified in the divorce action. *State ex rel. Arthur v. Superior Court*, 58 Wash. 97, 107 Pac. 876; *Hutson v. Hutson*, 192 Wash. 36, 72 P. (2d) 293. See, also, *Hillman v. Hillman*, 42 Wash. 595, 85 Pac. 61. None of these cases involves a contingent fee contract.

In *Delbridge v. Beach*, 66 Wash. 416, 119 Pac. 856, there was involved a contract whereby the attorney was to procure evidence for a contemplated divorce action, not for the purpose of the divorce itself, but to force the husband to divide his property with his wife. The wife had no interest in the property and no meritorious grounds for divorce. We held the contract void as against public policy on the ground that it contemplated an improper use of divorce procedures to coerce the husband into an unwilling division of his separate property. The contract there in question provided that the attorney's compensation would consist of one-fifth of the property obtained. However, this contingent feature of the contract was not discussed in the opinion.

As before indicated, the statute quoted above authorizes *lawful* fee contracts in divorce actions. We must therefore look elsewhere to determine whether contingent fee contracts in such actions are lawful.

In determining whether a contingent fee contract, or a fee contract of any other nature, is unlawful, the opinion in the *Beck* case, *supra*, suggests the following test:

"The validity of a contract or retainer in whatsoever form or howsoever effected, whether sought by client or lawyer, is determined by the same rules of law as other contracts; and having the mutual assent of the parties, it withstands impeachment, unless unlawful, —i. e., (1) contrary to the positive law; (2) contrary to positive morality; (3) contrary to public policy. Weeks, Attorneys at Law, § 364." (p. 583.)

It is not contended by the association that contingent fee contracts in divorce actions are contrary to positive law or morality. It is asserted, however, that such contracts are contrary to public policy and, for that reason, unlawful.

The question of whether such contracts are contrary to public policy has not heretofore been presented to this court. The almost universal rule elsewhere, however, is that contingent fee contracts in divorce actions are contrary to public policy. See the cases cited in 5 Am. Jur. 361, Attorneys at Law, § 166, 17 C. J. S. 620, Contracts, § 235 (c), and 30 A. L. R. 189, annotation; 3 Nelson on Divorce and Annulment (2d ed.) 230, § 29.08; Keezer on Marriage and Divorce (3d ed.) 696, § 618.

This rule is applied where the percentage fee is related to the award of alimony. *Jordan v. Westerman*, 62 Mich. 170, 28 N. W. 826; *McCarthy v. Santangelo*, 137 Conn. 410, 78 A. (2d) 240; *Lynde v. Lynde*, 64 N. J. Eq. 736, 52 Atl. 694; *Van Vleck v. Van Vleck*, 21 App. Div. 272, 47 N. Y. S. 470. It is also applied where the percentage fee is related to the distribution of property, and whether or not there has been a property settlement agreement. *In re Sylvester's Estate*, 195 Iowa 1329, 192 N. W. 442, 30 A. L. R. 180; *Overstreet v. Barr*, 255 Ky. 82, 72 S. W. (2d) 1014; *Klampe v. Klampe*, 137 Minn. 227, 163 N. W. 295; *Evans v. Hartley*, 57 Ga. App. 598, 196 S. E. 273; *McConnell v. McConnell*, 98 Ark. 193, 136 S. W. 931; *Dannenberg v. Dannenberg*, 151 Kan. 600, 100 P. (2d) 667; *Opperud v. Bussey*, 172 Okla. 625, 46 P. (2d) 319; *Newman v. Freitas*, 129 Cal. 283, 61 Pac. 907; *Theisen v. Keough*, 115 Cal. App. 353, 1 P. (2d) 1015. The rule is also followed where the contingent fee is a lump sum agreed upon in advance. *Barngrover v. Pettigrew*, 128 Iowa 533, 104 N. W. 904; *Ayres v. Lipschutz*, 68 Cal. App. 134, 228 Pac. 720.

The rule referred to applies whether the contract involves the plaintiff in a divorce action (*Jordan v. Westerman, supra*; *McCarthy v. Santangelo, supra*), or the defendant (*Klampe v. Klampe, supra*; *Dannenberg v. Dannenberg, supra*). The rule also governs whether the contract was entered into before the divorce action was instituted (*Barngrover v. Pettigrew, supra*; *In re Sylvester's Estate, supra*), or during its pendency (*Overstreet v. Barr, supra*; *Coleman v. Sisson*, 71 Mont. 435, 230 Pac. 582). Where, however, the

contingent fee contract calls for legal proceedings between husband and wife to settle property rights, but no divorce action is contemplated, the contract is valid. *Manning v. Edwards*, 205 Ky. 158, 265 S. W. 492.

The reason why such contracts, wherein any or all of the fee is made contingent upon the securing of a divorce, are held to be contrary to public policy is because of their tendency to deter or prevent a reconciliation between husband and wife. It is the policy of the law, as we said in *Hillman v. Hillman, supra,* to encourage husband and wife to compromise and settle between themselves their domestic troubles, and to discourage actions for divorce.

In *Jordan v. Westerman, supra,* which is generally regarded as the leading case on this subject, the reason behind this policy determination is stated as follows:

"Public policy is interested in maintaining the family relation. The interests of society require that those relations shall not be lightly severed, and that families shall not be broken up for inadequate causes or from unworthy motives; and where differences have arisen which threaten disruption, public welfare and the good of society demand a reconciliation, if practicable or possible.

"Contracts like the one in question tend directly to prevent such reconciliation, and, if legal and valid, tend directly to bring around alienation of husband and wife by offering a strong inducement, amounting to a premium, to induce and advise the dissolution of the marriage ties as a method of obtaining relief from real or fancied grievances which otherwise would pass unnoticed." (p. 180.)

Where, as here, the contingent fee contract is related, at least in part, to the amount of support money and alimony awarded to the wife, there is the additional objection that such a contract, if valid, would interfere with the duties of the court, as prescribed in the divorce statutes. RCW 26.08-.090 (Rem. Supp. 1949, § 997-9); RCW 26.08.110 (Rem. Supp. 1949, § 997-11). In fixing the amount and time of payment of support money and alimony, the court is entitled to have all the facts which would influence its decision. It is also entitled to be free from side agreements which would frustrate the court's effort to make suitable provision for the

wife without undue burden on the husband. *Jordan v. Westerman, supra*; *Lynde v. Lynde, supra*.

It is therefore our conclusion that the contingent fee contract here in question is void as against public policy.

As before indicated, Canon 13 of the Canons of Professional Ethics countenances contingent fee contracts only when they are sanctioned by law. A contingent fee contract which contravenes public policy and is for that reason void is not sanctioned by law. It is therefore a violation of the ethics of the profession for an attorney to enter into such a contract.

We are of the view, however, that a reprimand should not be adminstered in this case. The question is one of first impression in this state. Indeed, the question as to whether an attorney should be disciplined for entering into such a contract has apparently not arisen elsewhere. All of the decisions of other jurisdictions, cited in this opinion, involve civil actions to enforce such contracts, or to regain sums paid thereunder. It was not until after the instant controversy arose that the Seattle local administrative committee of the association obtained an opinion from the association's committee on legal ethics to the effect that it is unethical for attorneys to make a contingent fee agreement of this kind.

This opinion, by furnishing a guide for future conduct, will serve the only purpose which needs to be accomplished in this case.

The recommendation of the trial committee, as approved by the board of governors, calling for a reprimand of respondent, is therefore disapproved.

ALL CONCUR.